## 64059. DAVIS et al. v. THE STATE.

QUILLIAN, Chief Judge.

Defendants Davis and Zane appeal their convictions at a bench trial for possession of marijuana with intent to distribute.

At about 8:30 p.m., December 16, 1980, a foggy night, law enforcement officers of Bacon County and Alma found a twin engine aircraft abandoned on the runway of the Alma-Bacon County Airport. The plane's identification number was N300CP and one wing was damaged. The side door was open and numerous bales of marijuana were found in and around the plane.

After examining the interior of the plane and its cargo, Deputy Barnard began patrolling the roads in the vicinity of the airport to try to find who had been in the plane. At about 7:00 a.m., when it was getting light, he observed a man walking west away from the airport on Highway 32, about two to two-and-a-half miles from the airport. The man was fairly well dressed and carrying a small tote bag. He did not look at Barnard as Barnard drove by him and his clothes appeared to be torn and ragged. Barnard turned around, came up behind the man, stopped him and asked for identification. He identified himself as defendant Davis by producing a Louisiana driver's license. Barnard observed that Davis' clothing was not only ragged and snagged but also grass-stained, that he was wet and that he had a very strong distinctive odor which smelled the same as the interior of the plane that Barnard had examined the previous evening. Barnard thereupon frisked Davis for weapons and found in his right sock a page from a Jepperson airport directory showing runway maps and other information concerning airports in Indiana. Barnard then placed Davis under arrest and searched him completely, finding a one-dollar bill issued by the country of Belize, Central America; a health alert notice card from the Ministry of Health, Belize; and two receipts for aircraft fuel purchases showing the aircraft number 300CP, the same number as the abandoned plane. Barnard did not open Davis' tote bag but placed it in the trunk of his car and transported Davis to the Sheriff's office in Alma. Based upon what was found in the aircraft and on Davis' person, GBI agent Yeomans obtained a warrant to search Davis' tote bag, where information identifying Davis as a pilot and connecting him with the airplane was discovered. Also in the bag was a business card of a Timothy Zane, Investment Consultant, Agriculture-Industry-Tourism, giving an address in Belize City, Belize, Central America.

After Barnard had arrested Davis he told Deputy Altman to keep looking for other possible occupants of the plane. At about 7:30 a.m. while driving on Highway 32 west of the airport, Altman saw a man walking away from Highway 32 on a side road heading north, within a mile of where Davis had been found. He drove up to the man, who later identified himself as defendant Zane, and asked him where he was going. Zane told him that he was looking for a telephone, that he had been out drinking with some other persons who had put him

out and he had to spend the night in the woods. Zane was wet with grass stains, had leaves and grass on him and looked as if he had slept in the woods. Altman told Zane that he could take him to a telephone and Zane got into the front seat of the patrol car with Altman. As they were driving Zane told Altman that he was a cook on a boat out of Venezuela, South America. Altman made no effort to restrain Zane and drove him to the Sheriff's office where he took him inside and showed him the telephone. When Altman informed Barnard, who was at the office, of the circumstances in which he had come upon Zane, Barnard smelled Zane and found he had the same odor that the plane and Davis had. Barnard then placed Zane under arrest. Subsequently, torn up business cards of Zane's were found in the woods near the airport and some other pages from a Jepperson airport directory were found not far from where Davis was arrested. Both defendants' fingerprints were found in the plane. *Held:*

1. The first enumeration is that the trial court erred in denying defendants' motion to suppress evidence on the grounds that their arrests were without warrants, that the arresting officers did not have probable cause to arrest them, and that even if Barnard was authorized to perform a Terry-type stop of Davis his actions were improper because the papers he seized and examined did not resemble weapons.

An officer may make an arrest without a warrant if at the time of arrest he had probable cause to do so; that is, if the officer had "facts and circumstances within (his) knowledge and of which (he) had reasonably trustworthy information (which) were sufficient to warrant a prudent man in believing that the [defendant] had committed . . . an offense." Beck v. Ohio, 379 U.S. 89, 91 (85 SC 223, 13 LE2d 142); *Lynn v. State,* 130 Ga. App. 646, 647 (204 SE2d 346).

In United States v. Allen, 633 F2d 1282 (9th Cir. 1980) a defendant was arrested under circumstances comparable to the instant case. In Allen federal agents had information that marijuana was being unloaded from a ship by amphibious vehicles to a ranch on shore by a group of men in the early morning before light. A raid was conducted and marijuana found, but most of the men scattered and ran. A bulletin was issued to check anyone in the vicinity of the ranch who was wet or cold and without identification. At 9:00 p.m. that evening defendant Sherman was arrested while hitchhiking on a highway near the ranch, wearing soaking wet clothing covered with sand and without identification. His arrest was held to be with probable cause.

The arrest of defendant Davis in this case was under somewhat similar circumstances. Deputy Barnard had personal knowledge that

a planeload of marijuana had been abandoned at the airport. It was a damp, foggy night. Barnard began searching the roads around the airport. At first light in the morning he saw Davis walking away from the airport on Highway 32, which ran by the north boundary of the airport. Davis' clothes were torn, ragged and grass-stained and he was wet.

Although Barnard did not arrest Davis based upon his appearance and location, the similarity to United States v. Allen, supra, is such that he had sufficient probable cause to do so. But assuming, arguendo, that there was no probable cause at that point, Barnard had at least "articulable suspicion" to momentarily detain Davis to obtain further information. Terry v. Ohio, 392 U.S. 1 (88 SC 1868, 20 LE2d 889). While Davis was able to produce an out-of-state driver's license as identification, he also emanated a strong and distinctive odor which was the same odor Barnard had smelled when he entered the plane loaded with marijuana the previous evening. A distinctive odor, such as marijuana, " 'may be considered and may be a part of a totality of circumstances sufficient to validate' " an arrest. *State v. Medders,* 153 Ga. App. 680, 681 (266 SE2d 331). Even though Barnard testified he did not arrest Davis until he had done a weapons search and found the airport directory map in his sock, we find that there was sufficient probable cause to arrest Davis before the frisk search. Therefore the arrest of Davis was lawful as was the subsequent search of his person as an incident of the arrest.

As to defendant Zane who was first seen by Deputy Altman, Altman's information was similar to that of Barnard, excepting the knowledge of the distinctive odor in the plane. Davis was also walking away from the airport. He was wet, grass-stained, and looked as if he had spent the night in the woods. When Altman asked him where he was going, Zane said he was looking for a telephone. When Altman offered to take him to a telephone Zane accepted by voluntarily getting into the front of the police car with Altman. En route, he told Altman that he was a cook on a boat out of Venezuela, South America. He was not asked to identify himself, nor did he do so at that time.

While Altman testified that he did not restrain or arrest Zane, he admitted that he probably would not have let Zane out of the car. Assuming, arguendo, that Zane was under restraint, the similarity with United States v. Allen, 633 F2d 1282, supra, provided sufficient probable cause for Altman to arrest him when he got in the car.

But even if Altman did not have probable cause to arrest Zane, he had the same articulable suspicion to detain Zane to obtain further information as Barnard had to detain Davis. Terry v. Ohio, 392 U.S. 1, supra. In any event, Zane apparently voluntarily went with Altman to

the sheriff's office to use the telephone. There the circumstances in which Zane was found, plus his appearance and odor gave Barnard the same probable cause to arrest him as he had to arrest Davis and to search him as an incident thereto.

Accordingly, there is no merit in this enumeration.

2. The second enumeration asserts that Barnard's arrests of the defendants were unlawful because the Georgia Peace Officers Standards and Taining Act (Code Ann. § 92A-2101 et seq. (Ga. L. 1970, p. 208 through 1981, pp. 778-780)) did not authorize Barnard to arrest under § 2115 as he had not complied with § 2108 (employment qualification requirements) and § 2109 (training course for peace officers).

The evidence shows that Barnard was first appointed a peace officer on April 1, 1980 and made the arrests in December, 1980. He met all the requirements of § 2108, had successfully completed the course required by § 2109 and had applied for but had not yet received his certification under § 2106.

Defendants argue that since Barnard had not received his certification as a peace officer he was therefore not in compliance with the requirements of the Act and thus not empowered to arrest.

We do not agree. The disqualification to arrest of § 2115 is clearly directed at noncompliance. Since Barnard had complied with the requirements of the Act, even though he had not yet received his certification, we find that he was not disqualified to make arrests. Compare, *Douglas v. State,* 145 Ga. App. 42 (5) (243 SE2d 298).

3. The third enumeration has no merit in view of our holding in the first division that the arrests were lawful.

4. The final enumeration of error is that the warrant to search Davis' tote bag was not issued by a neutral and detached magistrate.

Because the justice of the peace testified he issued the warrant because it would help the officers solve the case, defendants argue that he was not a neutral and detached magistrate. *Reid v. State,* 129 Ga. App. 660 (2) (200 SE2d 456), which held that the issuing magistrate's failure to make a probable cause determination invalidated the warrant, is cited in support.

However, the justice of the peace in the instant case also testified that he made a determination from the affidavit for the warrant and the oral testimony of the law enforcement officer that probable cause existed to issue the warrant. Although the testimony of the justice of the peace was somewhat confusing as to his basis for issuing the warrant, considering all his testimony, we find that the trial court's determination that the warrant was properly issued was not clearly erroneous.

" 'Factual and credibility determinations of this sort made by a

trial judge after a suppression hearing must be accepted by appellate courts unless such determinations are clearly erroneous.' *Johnson v. State,* 233 Ga. 58 (209 SE2d 629) (1974). We do not believe the trial court's determination that the justice of the peace in this case was able to act as a neutral and detached magistrate was clearly erroneous." *Sanders v. State,* 151 Ga. App. 590 (2), 592 (260 SE2d 504).

*Judgment affirmed. Shulman, P. J., concurs. Carley, J., concurs in the judgment only.*

DECIDED SEPTEMBER 9, 1982 —
REHEARING DENIED NOVEMBER 8, 1982 —

*M. Theodore Solomon,* for appellants.
*C. Deen Strickland, District Attorney,* for appellee.