## 71665. THE STATE v. WILSON.
(346 SE2d 111)

BEASLEY, Judge.

Wilson was arrested and charged with burglary (OCGA § 16-7-1) and possession of tools for the commission of a crime (OCGA § 16-7-20). The trial court granted his motion to suppress a screw driver, razor, clothes, an undetermined amount of money taken from him, and testimony about the fruits of the search, on the basis that the underlying warrantless arrest was made without probable cause.

At the hearing an officer with the Jesup Police Department testified that about 10:00 p.m. he responded to a dispatch that a burglar

alarm was going off at the drug store and arrived about one minute later. He saw a person running east, and as the individual ran by some lights, the officer observed that he was wearing a light colored jacket or shirt. The officer pursued the runner but lost sight of him and dispatched a description to other officers in the area. Six to eight minutes after the transmission, the officer received notice from a deputy sheriff that the deputy had stopped a black man wearing a gray colored jacket about a block and a half away from the drug store. The officer went and saw that the man, Wilson, wore a light colored jacket ripped in the shoulder, had straw and leaves on the jacket and in his hair, "appeared to be someone that'd been laying down," and seemed to be somewhat nervous. During a pat down search (which did not reveal the items sought to be suppressed) the officer noted that Wilson was then a little more nervous and acted as though he did not want a lot of searching done.

The deputy who stopped Wilson testified that he saw a man who was wearing a light colored jacket or coat come out of an alley, followed him and pulled up beside him. The deputy asked for an ID and was given a driver's license which bore the name Terry Lee Wilson. The deputy noticed that Wilson's coat had a cut place and that there was grass and straw on the jacket and on Wilson's head. This appearance was significant to the deputy because he had observed that the drug store's glass front door had been broken out (which could account for the cut jacket) and because he was aware that the officer had lost sight of the suspect long enough for him to have laid somewhere to hide (as in grass and straw). When the deputy got out of the car, he recognized Wilson and recalled an earlier pursuit of him on an escape charge and a previous arrest for burglary. The deputy further testified that the officer originally spotting Wilson then drove up, and nodded his head in agreement that Wilson appeared to be the subject he had chased. Neither the deputy nor the officer saw anyone else on foot in the area resembling the person seen running from the drug store.

The ground for the motion to suppress was that defendant was arrested in violation of OCGA § 17-4-20 so that the subsequent search of his person which yielded the items was unreasonable and thus in violation of the Fourth and Fourteenth Amendments as well as the 1983 Const. of Ga., Art. I, Sec. I, Par. XIII. It is not clear from the motion whether the constitutional challenges were also meant to be independent of the statutory ground, in the sense that even if the arrest conformed to the statute's mandate, it was still constitutionally impermissible. We will consider it in that light, as the trial court may have done so.

As it applies here, the statute provides that a warrantless arrest may be made by an officer "if there is likely to be failure of justice for

want of a judicial officer to issue a warrant." The state constitutional provision relied on provides security against "unreasonable searches and seizures" and sets out the requirements for issuance of a warrant. So does the Fourth Amendment. The Supreme Court of Georgia dealt with both "federal and state law" in *Durden v. State*, 250 Ga. 325 (297 SE2d 237) (1982). It there discussed and applied the federal constitutional standard as interpreted in *Beck v. Ohio*, 379 U. S. 89 (85 SC 223, 13 LE2d 142) (1964) and the statutory standard. As to these, it said: "We find that these dual inquiries, one under federal law and one under state law, serve no useful purpose and result in complicating the law in an area which needs to be readily understood by law enforcement officers. Hence we hold that if an officer, while in the presence or vicinity of the accused, acquires 'probable cause' (federal) to arrest the accused outside his or her home, and fails to make such arrest, there is likely to be a failure of justice as a matter of law if the officer is required to delay the arrest until a warrant is obtained. That is to say, we find the state rule to be the same as the federal rule. An arrest and search, legal under federal law, are legal under state law." Id. at 327. Thus it made a policy decision that the state statute would mean the same thing as the United States Supreme Court said the federal constitution meant (at least as federal constitutional law then stood);[1] it did not undertake statutory construction. *Durden*'s rule and *Beck*'s standard is still applied in Georgia. *Allen v. State*, 172 Ga. App. 663, 667 (5) (324 SE2d 521) (1984); *Bodiford v. State*, 169 Ga. App. 760 (315 SE2d 274) (1984).

The United States Supreme Court not having changed *Beck*, and the Georgia Supreme Court not having modified *Durden*, their pronouncements remain the current status of the law in Georgia. In *Mincey v. State*, 251 Ga. 255, 261 (6a) (304 SE2d 882) (1983), the Supreme Court recites the *Beck* standard as the Georgia standard and examined *United States v. Watson*, 423 U. S. 411 (96 SC 820, 46 LE2d 598) (1976) for the federal standard.

Although the Georgia Supreme Court did not expressly address the state constitution as a third focal point, we find no basis for giving a different consideration to the question in applying Paragraph XIII in the context of the question and circumstances of this case.

Under the current single standard then, "an arrest is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed

---

[1] Query whether Georgia's statute, by this policy pronouncement, automatically changes in meaning with changes in federal constitutional warrantless arrest law enunciated by the United States Supreme Court.

or was committing an offense." *Durden*, supra at 326.[2]

The court must consider the totality of the circumstances. Wilson's appearance and the cut jacket shoulder, his proximity to the burglary site, the observation of a running person believed by the officer to be the same one stopped pursuant to his description by the other officer a few minutes later, the short time between the report of the burglar alarm and the apprehension of Wilson, the absence of anyone else in the area matching the suspect's description, Wilson's nervousness, and the deputy's knowledge of Wilson's prior record of burglary and escape, added up to probable cause to arrest him. Had the officers released him at that time to go and secure a warrant, they had no assurance that they would be able to find him or that any inculpatory evidence he had with him, including possibly the jacket, would later be available.

Thus the trial court clearly erred in granting the defendant's motion to suppress, *State v. Stephens*, 167 Ga. App. 707, 708 (307 SE2d 518) (1983).

*Judgment reversed. Deen, P. J., and Benham, J., concur.*

DECIDED JUNE 10, 1986.

*Glenn Thomas, Jr., District Attorney, Jerry W. Caldwell, Assistant District Attorney*, for appellant.

*Kris Knox*, for appellee.

---

[2] In *Moore v. State*, 174 Ga. App. 826, 827 (331 SE2d 115) (1985), it is stated that "In any event, since in this case the constitutional requirement of probable cause was met, the arrest was valid whether or not OCGA § 17-4-20 (a) was violated," citing *Quick v. State*, 166 Ga. App. 492 (2) (304 SE2d 916) (1983). Of course, if the *statute* was violated, the arrest would nevertheless be illegal on statutory grounds, even if it were legal on less restrictive constitutional grounds. But *Durden* rules they are the same, at least insofar as the Georgia statute and the federal constitution are concerned, so the statement of a possible dicotomy is puzzling.