## S94A1468. BURNHAM v. THE STATE.
### (453 SE2d 449)

BENHAM, Presiding Justice.

Appellant Burnham was convicted of murder, armed robbery and aggravated assault in connection with the shooting of a convenience store clerk in Hall County.[1] At the time of the crimes, appellant was 16 years old, and his two co-indictees were 15.

1. Through the testimony of one co-indictee who had pled guilty, appellant's recorded statement to police, and a letter written by appellant to his girl friend while awaiting trial, the State presented evidence that the three co-indictees entered the convenience store with intent to rob it. When the store clerk opened the cash register to complete the sale of a soft drink to one of the co-indictees, appellant and the other co-indictee drew their weapons and each shot the clerk once in the chest. Appellant then leaned over the counter and fired the fatal shot into the fallen man's head. The trio fled the scene in the direction of a shopping center one-half mile away. They placed the two guns in a plastic bag which they secreted near a tree, and went to see a movie. It was established by expert testimony that two of the three bullets fired into the store clerk were fired from the .22-caliber revolver identified as appellant's gun, with the remaining shot fired by the .25-caliber semi-automatic pistol identified as the co-indictee's gun. The youths were apprehended upon exiting the theater at the end of the movie, and $125 in $5 bills was found in appellant's underwear. The evidence was sufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that appellant was guilty of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant argues that his post-arrest inculpatory statement was taken in violation of the Fourth and Fifth Amendments to the U. S. Constitution and should have been suppressed. He contends his warrantless arrest outside the movie theater was without probable cause and the statement made thereafter was fruit of the illegal arrest, and that his post-arrest statements were not freely and voluntarily made. The trial court denied the motions, ruling that law enforcement officers had sufficient probable cause to arrest appellant and his companions, and that appellant's in-custody statement was freely and voluntarily given without hope of benefit or fear of injury.

---

[1] The crimes occurred on March 14, 1993. Appellant and two companions were indicted on May 4. Appellant's trial commenced on November 15, 1993, and concluded with the return of the jury's guilty verdicts on November 19. That same day, appellant was sentenced to two consecutive life sentences and a concurrent 20-year sentence. His motion for new trial, filed December 17, was denied on April 5, 1994, and the notice of appeal was filed April 29, 1994. The case was docketed in this court on June 23, 1994, and oral argument was heard on October 11, 1994.

If appellant's warrantless arrest was supported by probable cause, then appellant's enumeration grounded on the Fourth Amendment is without merit. We examine first whether the law enforcement officers had probable cause when they arrested appellant and his companions after they exited the movie theater.

Based on testimony given at the hearing on appellant's motion to suppress, the trial court found that the police watch commander was told by a fellow officer that a man had seen three young males, one of whom was wearing a tan or light brown jacket, running from the vicinity of the convenience store toward a local shopping center just before the police arrived at the convenience store. As soon as the watch commander radioed the information to other officers, a county deputy sheriff responded that he had seen a trio matching the broadcast description walking toward the shopping center. Due to inclement weather conditions, there were few pedestrians in the area. The watch commander ordered a door-to-door canvas of the businesses in the area, and a theater ticket clerk reported that three youths matching the broadcast description had purchased tickets for a movie that had started 15-20 minutes earlier, had acted "strangely," and had spent a long time in the theater rest room before going into the screening room. Aware that the movie was scheduled to end in 30-45 minutes, the watch commander decided to apprehend the youths after they exited the theater. As appellant and his co-indictees left the theater, the deputy sheriff who had responded to the radio lookout indicated that they were the three he had seen earlier, and they were arrested approximately 100 yards from the theater. The watch commander testified that the youths were not charged with anything when they were arrested, but were taken into custody for questioning. The trial court concluded that sufficient probable cause existed for the arrest of the threesome.

"[E]very arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." *Michigan v. Summers*, 452 U. S. 692, 700 (101 SC 2587, 69 LE2d 340) (1981). It is without question that appellant and his companions were seized without a warrant when they were apprehended after leaving the theater.

A "warrantless arrest" is constitutionally valid if at the time of the arrest the arresting officer has probable cause to believe the accused has committed or is committing an offense. [Cits.] Probable cause exists if the arresting officer has knowledge and reasonably trustworthy information about facts and circumstances sufficient for a prudent person to believe the accused has committed an offense. [Cits.]

*Brown v. State*, 262 Ga. 728 (2a) (425 SE2d 856) (1993). When the youths were arrested, their only connections with the crimes committed at the convenience store were that they had been seen running from the area where the store was located shortly after the crime was committed, and that they had acted strangely at the movie theater shortly thereafter.[2] There was no eyewitness to the crime who saw the trio at the scene of the crime (compare *Callaway v. State*, 257 Ga. 12 (2) (354 SE2d 118) (1987); *Phillips v. State*, 233 Ga. 800 (213 SE2d 664) (1975); *Morgan v. State*, 195 Ga. App. 732 (394 SE2d 639) (1990); *Hamilton v. State*, 162 Ga. App. 116 (290 SE2d 478) (1982) (where probable cause was provided by eyewitness descriptions of the perpetrators); *Williams v. State*, 251 Ga. 749, 792 (312 SE2d 40) (1983); and *Sanders v. State*, 235 Ga. 425 (219 SE2d 768) (1975) (where probable cause was provided by multiple factors linking the defendant to the crime). While police had an articulable suspicion sufficient to authorize them to stop the youths briefly for questioning, they did not have sufficient facts and circumstances for a prudent person to believe the trio had committed the crimes. See *Hunt v. State*, 212 Ga. App. 217 (441 SE2d 514) (1994). Cf. *State v. Harris*, 256 Ga. 24 (343 SE2d 483) (1986) (discovery in the household well of the body of defendant's missing roommate killed by shotgun blast was not probable cause to authorize arrest of defendant).

3. Even if appellant made the statement while in custody pursuant to an unlawful arrest, that fact alone would not require exclusion of appellant's incriminating statement. *Brown v. Illinois*, 422 U. S. 590, 603 (95 SC 2254, 45 LE2d 416) (1975); *Thompson v. State*, 248 Ga. 343 (2) (285 SE2d 685) (1981). The question then is whether the evidence sought to be suppressed is the result of exploitation of the illegality or is sufficiently attenuated from the illegality to be purged thereof. *Wong Sun v. United States*, 371 U. S. 471 (83 SC 407, 9 LE2d 441) (1963); *Brown v. Illinois*, supra at 599; *Thompson*, supra at 344. The burden of showing admissibility rests on the prosecution. *Brown v. Illinois*, supra at 604; *State v. Harris*, supra at 26. Factors to be considered are: the presence of the warnings prescribed by *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), the voluntariness of the incriminating statement, the temporal proximity of the arrest and the statement, the presence of intervening circumstances between the arrest and the statement, and the purpose and flagrancy of the official misconduct. *Brown v. Illinois*, supra at 603-604. See also *Thompson v. State*, supra. With these factors in mind, we examine the post-arrest proceedings in this case.

---

[2] At the suppression hearing, the theater clerk testified that the youths were "nervous and fidgety." The trial court described the trio as acting "strangely."

After their arrest, the youths were transported to the Gainesville police headquarters where, upon learning their ages, the police contacted their guardian.[3] The guardian was present during every police interview conducted with each youth, and executed a waiver of rights form along with each youth. One of appellant's co-indictees was questioned first, approximately 90 minutes after the arrests, and he implicated appellant and the third youth in the incident. The youth also led officers to the site where the threesome had hidden the two weapons. As a result of the first youth's statement, appellant was "strip-searched" and the $125 in $5 bills was found in his underwear.[4] Four hours after they were arrested, appellant and the third youth were read their rights, charged with armed robbery, and taken to a regional youth development center. The following evening, 22 hours after his arrest, investigating officers repeated the *Miranda* warnings to appellant who then described the youths' robbery plan and admitted shooting the store clerk twice, taking the money, and hiding the guns.

4. A "threshold requirement" for Fourth Amendment analysis is the Fifth Amendment question: whether the incriminating statement made after proper *Miranda* warnings was voluntary. If the Fifth Amendment has been violated, the Fourth Amendment issue need not be reached. *Dunaway v. New York*, 442 U. S. 200, 217 (99 SC 2248, 60 LE2d 824) (1979). In the case at bar, the additional factor of appellant's status as a juvenile was considered by the trial court in determining the voluntariness of his post-arrest statement. See *State v. McBride*, 261 Ga. 60 (2) (b) (401 SE2d 484) (1991).

The transcript of appellant's statement made to police twenty-two hours after his arrest supports the findings made by the trial court in considering the factors listed in *McBride*, supra: appellant was sixteen and in the ninth grade; had been informed of and given a detailed explanation of his *Miranda* rights; had previously been involved with law enforcement and exposed to the criminal process; was aware of the charges against him and had been formally charged at the time of questioning; knew of his right to speak to an attorney, had his guardian present, and had not been denied access to a telephone; the interview lasted twenty-two minutes and was conducted with "relaxed" interview methods in the presence of two officers; and there was no evidence that appellant had previously refused to give a statement or subsequently repudiated the statement.

Appellant contends his statement was not voluntary because his

---

[3] Appellant and his co-indictees were residents of an "attention home" which was owned by a Hall County resident who contracted with Division of Youth Services to provide a home for teenage boys who "have done a little something . . . and . . . the parents can't care for them." The owner of the home served as the boys' legal guardian.

[4] Appellant did not contest the admission of this evidence.

parents were not contacted (see OCGA § 15-11-19 (c))[5] and because his guardian who was present when he was questioned "did not act on [his] behalf." OCGA § 15-11-19 (c) requires officers who take a juvenile into custody to notify promptly the court and the child's parent, guardian, or other custodian that the child is in custody and the reasons for that custody. The police notified appellant's guardian of his arrest and, within an hour of that arrest, the guardian was at police headquarters with appellant. By notifying appellant's guardian of his arrest and the grounds therefor, the police complied with § 15-11-19 (c). That the guardian cooperated with the police in their investigation of appellant's involvement in the crime does not require a finding that appellant's statement was not voluntarily made. As noted by the trial court, "[H]er advice to [appellant was] consistent with what many concerned and caring parents would have told their own children, to tell the police the truth. . . ." The trial court did not err when it determined that appellant's statement was freely and voluntarily made and not violative of the Fifth Amendment.

5. Having determined that the "threshold requirement" of compliance with the Fifth Amendment was met in this case, we turn to the other factors paramount to the determination whether appellant's statement was sufficiently attenuated from his illegal arrest to be admitted into evidence.

(a) The shorter the lapse in time between the illegal police activity and the defendant's statement, the more likely it is that the defendant's statement was the product of the illegal activity. See, e.g., *State v. Harris*, supra; *Brown v. State*, 188 Ga. App. 184 (372 SE2d 514) (1988); *Griffith v. State*, 172 Ga. App. 255, 258 (322 SE2d 921) (1984). However, the temporal proximity between the illegal arrest and the statement is "an ambiguous factor [since] [i]f there are no relevant intervening circumstances, a prolonged detention may well be a more serious exploitation of an illegal arrest than a short one." *Dunaway v. New York*, supra, 442 U. S. at 220 (Stevens, J., concurring). Where, as here, appellant's statement came 22 hours after his illegal arrest, the "temporal proximity" factor is the least conclusive.

(b) The State suggests that the statement of appellant's co-indictee implicating appellant in the armed robbery and murder of the store clerk was an intervening circumstance sufficient to break the causal connection between appellant's illegal arrest and his confession. Termination of the illegal custody prior to the confession (*Wong Sun v. United States*, supra), an appearance before a judicial officer between the illegal arrest and a lineup (*Johnson v. Louisiana*, 406

---

[5] During an interview to obtain general background information from appellant and his guardian approximately five hours after appellant's arrest, the investigating officers learned that appellant's father was deceased and his mother was incarcerated.

U. S. 356 (92 SC 1620, 32 LE2d 152) (1972)); and consultation with counsel (*United States v. Webster*, 750 F2d 307 (5th Cir. 1984)) have qualified as intervening circumstances. However, an intervening circumstance that flows from the illegal arrest of the defendant such as the confrontation of the defendant with evidence gathered during his unconstitutional detention "militate[s] strongly against attenuation." *Bell v. State*, 724 SW2d 780, 789 (Tex. Crim. App. 1986); *State v. Winegar*, 147 Ariz. 440 (711 P2d 579) (1985).

(c) The last factor for consideration is the "purpose and flagrancy of the official misconduct." In response to the possibility that appellant's Fourth Amendment right to be free from unreasonable seizure might have been violated, the State offers that the arresting officers acted in good faith in arresting appellant. While the U. S. Supreme Court has changed its position with regard to the applicability of a "good faith" exception to the exclusionary rule (compare *Taylor v. Alabama*, 457 U. S. 687, 693 (102 SC 2664, 73 LE2d 314) (1982) with *United States v. Leon*, 468 U. S. 897 (104 SC 3405, 82 LE2d 677) (1984)), this court has concluded that a defendant's statutory right to exclusion of evidence (OCGA § 17-5-30) has no "good-faith" exception. *Gary v. State*, 262 Ga. 573 (422 SE2d 426) (1992). We therefore decline to adopt the suggestion that the fact that the officers acted in good faith when they illegally arrested appellant made the confession subsequently obtained an act of appellant's free will so as to purge the taint of illegality. See *Wong Sun v. United States*, supra, 371 U. S. at 486. We conclude that appellant's incriminating statement was not sufficiently attenuated from his illegal arrest to authorize its admission into evidence at his trial. See *State v. Harris*, supra at 26.

6. However, the determination that appellant's confession should not have been admitted at trial does not require reversal of appellant's conviction. In addition to appellant's confession, the State presented the testimony of appellant's co-indictee whose description of appellant's role in the crimes comported with that contained in appellant's confession; the testimony of the teenager who sold appellant one of the guns used in the murder, and a letter from appellant to his girl friend, written 11 days after his arrest and after he had made an appearance before a judicial officer, in which he reiterated his role in the armed robbery and murder. In light of the cumulative nature of the confession, any error in its admission was harmless. *McLendon v. State*, 259 Ga. 778 (4) (387 SE2d 133) (1990).

*Judgment affirmed. All the Justices concur, except Hunstein, Carley and Thompson, JJ., who concur specially, and Hunt, C. J., who concurs in the judgment only.*

CARLEY, Justice, concurring specially.

While I concur in Divisions 1 and 4 and in the judgment of the

majority opinion, I cannot agree with Division 2 because, in my view, the evidence authorized the trial court's determination that law enforcement officers did have probable cause to arrest appellant and his co-indictees after they exited the movie theater. As a result, I believe that it is unnecessary to reach the issues addressed in Divisions 3, 5 and 6.

The majority emphasizes the absence of an eyewitness who saw the trio at the scene of the crime, but gives little consideration to the fact that an eyewitness did see them "running like a racehorse" away from the scene. In several cases, Georgia courts have upheld a finding of probable cause to arrest a suspect in the vicinity of a recent crime having no eyewitnesses. *Davis v. State*, 203 Ga. App. 227, 228 (1) (416 SE2d 771) (1992); *State v. Wilson*, 179 Ga. App. 334 (346 SE2d 111) (1986); *Davis v. State*, 164 Ga. App. 312 (295 SE2d 131) (1982). See also *Maggard v. State*, 259 Ga. 291, 292 (1) (380 SE2d 259) (1989). If an eyewitness description is required in such instances, it will often be impossible to establish probable cause in cases where there were no eyewitnesses, such as many burglaries (e.g., *Davis v. State*, supra, 203 Ga. App.; *State v. Wilson*, supra), and in cases where the only eyewitness was the victim of murder, such as the instant case.

In reviewing a probable cause determination, we should consider *"all* the facts available to" the arresting officer (*Hall v. State*, 200 Ga. App. 585, 587 (1) (409 SE2d 221) (1991)), and not make the lack of an eyewitness description dispositive. Important facts and circumstances in this case include the following: the short time which had elapsed between the murder and the first sighting of appellant and his co-indictees; the close proximity of the location of that sighting to the crime scene; the limited number of pedestrians in the area due to the inclement weather; the direction of travel by the trio away from the crime scene; their running; and their continuing unusual and nervous behavior. See *Davis v. State*, supra, 203 Ga. App. at 228 (1); *State v. Wilson*, supra at 337; *Davis v. State*, supra, 164 Ga. App. at 315 (relying on *United States v. Allen*, 633 F2d 1282 (9th Cir. 1980)). See also *Chambers v. Maroney*, 399 U. S. 42, 44, 46 (90 SC 1975, 26 LE2d 419) (1970).

> Had the officers released [appellant] . . . to go and secure a warrant, they had no assurance that they would be able to find him or that any inculpatory evidence he had with him . . . would later be available.

*State v. Wilson*, supra at 337.

Because the trial court was authorized to find that appellant's arrest was supported by probable cause, there was no Fourth Amendment violation. As the majority so astutely discusses in Division 4,

there is no viable basis for a Fifth Amendment claim in this case. Therefore, the judgment of conviction should be affirmed without even reaching the harmless error analysis set forth in Division 6. There was no error.

I am authorized to state that Justice Hunstein and Justice Thompson join in this special concurrence.

DECIDED FEBRUARY 13, 1995 —
RECONSIDERATION DENIED MARCH 10, 1995.

*Verna L. Smith,* for appellant.

*Lydia J. Sartain, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Rachelle L. Strausner, Assistant Attorney General,* for appellee.