## S06A1455. STINSKI v. THE STATE.
### (642 SE2d 1)

HUNSTEIN, Presiding Justice.

Darryl Scott Stinski has been indicted on two counts of malice murder, two counts of burglary, two counts of arson in the first degree, five counts of entering an automobile, one count of cruelty to children in the first degree, and one count of possession of a controlled substance with intent to distribute. The crimes allegedly occurred on April 11, 2002. The State has given notice of its intent to seek the death penalty. This Court granted Stinski's application for interim review and directed the parties to address whether the trial court erred in denying Stinski's motion to suppress evidence obtained during a warrantless seizure and search of a red tote bag; whether the trial court erred in refusing to suppress Stinski's first custodial statement; whether the trial court erred in denying Stinski's motion to exclude certain photographs from evidence; and whether the trial court erred in denying Stinski's motions concerning the amended discovery statute. Stinski has raised an additional argument alleging that the trial court erred in denying his motion to quash the indictment based on the participation of an allegedly-ineligible grand juror. For the reasons set forth below, we find no error.

1. Stinski filed a motion to suppress a red tote bag and its contents. The trial court denied the motion and the State argues, inter alia, that the ruling was correct because Stinski lacks standing to seek suppression of the tote bag in that it was property stolen from one of the victims. See *Sanborn v. State*, 251 Ga. 169 (1) (304 SE2d 377) (1983) (no legitimate expectation of privacy or possessory interest in stolen property). The sole evidence on this issue introduced at the hearing on Stinski's motion to suppress was testimony by a police officer that residents in the home where Stinski had been staying voluntarily removed the tote bag from the home then contacted the police to come for the bag and that the residents had repeated to police information they had overheard that indicated the bag contained items stolen from the victims.

Although "the burden of proving that the search and seizure were lawful shall be on the state," OCGA § 17-5-30 (b); see *Davis v. State*, 266 Ga. 212 (465 SE2d 438) (1996), the defendant bears the

burden of proof where his or her standing to raise a challenge to the legality of a search or seizure is contested by the State. *Todd v. State*, 275 Ga. App. 459 (1) (620 SE2d 666) (2005); *Atwater v. State*, 233 Ga. App. 339 (2) (503 SE2d 919) (1998). See OCGA § 24-4-1; see also 6 LaFave, Search and Seizure, § 11.2 (b), pp. 46-47 (4th ed. 2004). Stinski presented no admissible testimony on the question whether he was "aggrieved by an unlawful search and seizure . . . of property, the possession of which is not otherwise unlawful," OCGA § 17-5-30 (a), and accordingly cannot prove he has standing to raise a challenge to the legality of the search of the red tote bag. Thus, the trial court did not err by denying Stinski's motion to suppress the evidence obtained through the search of the tote bag.[1]

2. Stinski argues that his custodial statements are inadmissible for a number of reasons. As set forth below, we disagree.

(a) Stinski argues that his custodial statements are inadmissible because he was offered a hope of benefit during his custodial interrogation in violation of OCGA § 24-3-50 by certain statements made to him by the interrogating officers. The statements indicated that Stinski should help himself, that it was in his "best interest to tell" what he knew, and that the officers would "take [his] tape and show the district attorney and the judge" that he did not want to help himself. This Court has held that in applying OCGA § 24-3-50,

> [i]t is not improper for the police to encourage a suspect to help herself by telling the truth. It also does not render a statement involuntary for the police to tell a suspect that the trial judge may consider her truthful cooperation with the police.

---

[1] The evidence before the trial court supported the constitutionality of the State's seizure of the red tote bag, in that the removal of the bag from the residence by private citizens means there is no constitutional or statutory search and seizure concern regarding the privacy of the home. See *State v. Young*, 234 Ga. 488 (216 SE2d 586) (1975). However, while testimony by a police officer at the hearing on Stinski's motion, in which the officer related hearsay about Stinski's alleged statement to a lay witness that the tote bag belonged to one of the victims, supports a factual determination that the officer *heard* the lay witness's statement and provides probable cause for the legal determination whether the officer had probable cause for the search, see *Banks v. State of Ga.*, 277 Ga. 543 (1) (592 SE2d 668) (2004) (recognizing long established rule that hearsay is admissible in determining existence of probable cause), such hearsay is not admissible evidence for the truth of the matter asserted, i.e., whether the tote bag was indeed stolen property. See *Waldrip v. Head*, 279 Ga. 826, 828 (II) (A) (620 SE2d 829) (2005) (noting Georgia's long-standing rule that inadmissible hearsay lacks probative value even though the opposing party does not object to its introduction). Accordingly, the trial court is cautioned that this opinion should not be construed as a finding that the State's search of the red tote bag was supported by admissible evidence.

(Footnotes omitted.) *Taylor v. State*, 274 Ga. 269, 273 (2) (553 SE2d 598) (2001). The trial court did not clearly err by finding that the statements in question did not constitute a hope of benefit.

(b) Stinski argues that his custodial statements are inadmissible because they are the fruit of his allegedly-illegal arrest in his co-indictee's home without a warrant. Pretermitting the question of whether Stinski had a constitutional privacy interest based on his status as an invited guest and whether he therefore has standing to challenge the entry into the home without a warrant, see 3 LaFave, Search and Seizure, § 11.3 (b), pp. 143-162 (4th ed. 2004), we find that his statements made later outside the home during his custodial interrogation are admissible regardless of whether his arrest inside the home without a warrant was illegal. Even where an arrest is unlawfully made inside a residence without a warrant, a subsequent statement made *outside* the residence need not be suppressed on Federal constitutional grounds. *Pittman v. State*, 277 Ga. 475 (4) (592 SE2d 72) (2004). Stinski's arguments based on OCGA § 17-5-30 (a) are misplaced because that statute concerns "tangible evidence and is not the proper vehicle to challenge the admissibility of a confession. [Cit.]" *Bell v. State*, 280 Ga. 562, 563 (2), n. 2 (629 SE2d 213) (2006).[2]

(c) Stinski argues that there was not probable cause for his arrest. This argument is meritless, as officers had been informed by other residents in the home where Stinski was living that he had admitted killing the victims, and that Stinski had even shown the other residents a tooth from one of the victims.

(d) Stinski argues that his custodial statements are inadmissible because they are the fruit of the search of the red tote bag. See 6 LaFave, Search and Seizure, § 11.4 (c) (4th ed. 2004). As discussed above, Stinski has failed to bear his burden to prove his standing to challenge the legality of the search of the tote bag. Accordingly, his claim that the statements are inadmissible as the fruit of an unlawful search must fail.

3. Stinski filed a motion to exclude a number of photographs of the victims' badly burned bodies and body parts. As to those photographs that depict stabbing and cutting wounds inflicted before the fire and the effects of the fire set by the perpetrators, we find that the trial court did not abuse its discretion in weighing the photographs' probativeness against any undue prejudice. See, e.g., *Whitaker v. State*, 275 Ga. 521 (2) (570 SE2d 317) (2002). We reach this finding despite Stinski's contention that the same relevant matters could

---

[2] To the extent that *Burnham v. State*, 265 Ga. 129 (5) (c) (453 SE2d 449) (1995), could be construed as suggesting a contrary conclusion, it is disapproved.

possibly be proven through testimony rather than through photographs because we recognize that photographs are inherently more persuasive regarding the existence of the things they depict than testimony regarding those same things.

The trial court did not explicitly address and Stinski has raised no challenge to three photographs that show the complete jaw removed from Susan Pittman's body and two photographs that seem to depict another excised portion of one of the victims' bodies. This Court has held that mid-autopsy and post-autopsy photographs are admissible only when they depict injuries or other relevant matters not otherwise apparent. See *Jackson v. State*, 272 Ga. 429 (2) (531 SE2d 700) (2000); *Brown v. State*, 250 Ga. 862 (5) (302 SE2d 347) (1983). Thus, although we do not find any reversible error, the trial court is cautioned that this opinion should not be construed as a finding that these five photographs are admissible.

4. On June 19, 2002, Stinski filed written notice of his election to participate in the criminal discovery procedure. See OCGA § 17-16-1 et seq. That procedure was amended during the pendency of Stinski's pre-trial proceedings by the Criminal Justice Act of 2005 and a subsequent, untitled act. 2005 Ga. Laws, p. 20, §§ 12, 13; 2005 Ga. Laws, p. 474, § 1. The amended discovery procedure applies to Stinski's case because the act amending that procedure specifies that the amendments "shall apply to all trials which commence on or after July 1, 2005" and Stinski's trial has not yet begun. 2005 Ga. Laws, p. 20, § 17. Stinski argued in the trial court that the amended discovery procedure is unconstitutional and, alternatively, that he should be allowed to opt out of it. We disagree.

(a) We presume the General Assembly enacted the amendments to the discovery procedure with knowledge of the existing law. See *Hart v. Owens-Illinois, Inc.*, 250 Ga. 397, 400 (297 SE2d 462) (1982). With this knowledge, the General Assembly set an effective date that would encompass pending cases. 2005 Ga. Laws, p. 20, § 17. The amendments make no alteration to the portion of the procedure governing how and when defendants elect to participate in the procedure. Nor do the amendments create any exceptional treatment to be applied to those defendants like Stinski who had already elected to participate in the procedure but whose trials had not yet begun. In view of the General Assembly's clear intent, we hold that the amendments to the discovery procedure apply to Stinski's case and that his previous election to participate in that procedure continues to be binding upon him. This holding dispenses with Stinski's argument that he should be permitted to opt out of the discovery procedure as a matter of statutory law.

(b) Stinski argues that the amended discovery procedure is unconstitutional because it imposes certain discovery burdens on

him without imposing reciprocal burdens on the State. While it is true that a discovery procedure that imposes discovery burdens on criminal defendants must impose reciprocal burdens on the State in order to satisfy due process, see *Wardius v. Oregon*, 412 U. S. 470 (II) (93 SC 2208, 37 LE2d 82) (1973), we find that the amended discovery procedure *does* impose such reciprocal duties on the State.

The amended statute requires a defendant to produce, at or before the announcement of a guilt/innocence verdict, books, papers, documents, photographs, films, recordings, tangible objects, and audio and visual recordings and to allow inspection and photographing of buildings if the defendant intends to use any of these items as evidence in the sentencing phase. OCGA § 17-16-4 (b) (3) (A). A defendant must also disclose, at or before the guilt/innocence verdict, reports regarding any mental health examinations or other scientific tests that the defendant intends to introduce into evidence in the sentencing phase. OCGA § 17-16-4 (b) (3) (B). Finally, a defendant must disclose five days before trial the identity of witnesses the defendant intends to call at sentencing and must disclose at or before the guilt/innocence verdict any non-privileged statements of those witnesses that are in the defendant's possession. OCGA § 17-16-4 (b) (3) (C).

Stinski argues that these highly-specific duties of disclosure exceed the duty imposed on the State regarding sentencing evidence, which Stinski argues is solely to "provide the defendant with *notice* of any evidence in aggravation of punishment that the state intends to introduce in sentencing" at least ten days before trial. (Emphasis supplied.) OCGA § 17-16-4 (a) (5). The timing of the sentencing phase disclosures is unobjectionable, however, because the State's duty to disclose arises earlier than the defendant's. While the *contents* of the two disclosures do seem, at first blush, to be unequal, a careful review of the entire discovery procedure reveals that the State's duties are, in fact, fully reciprocal. See *State v. Griffin*, 268 Ga. 540, 542 (491 SE2d 340) (1997) (noting that statutes that are in pari materia should be construed together). The amended discovery procedure provides that, "[e]xcept as provided" in the subsection governing the *defendant's* duties regarding sentencing phase evidence, the provisions governing guilt/innocence phase duties "shall also apply to sentencing hearings and the sentencing phase of a death penalty trial." OCGA § 17-16-2 (f). Thus, the *State* is required to provide the same discovery regarding the sentencing phase as it is required to provide regarding the guilt/innocence phase. The content of the discovery the State is required to provide exactly mirrors the discovery required of the defendant under OCGA § 17-16-4 (b) (3). See OCGA §§ 17-16-3, 17-16-4 (a) (1)-(4), 17-16-7, and 17-16-8. The provision in OCGA § 17-16-4 (a) (5) requiring the State to give "notice" of its sentencing

phase evidence ten days before trial, therefore, simply provides the defendant the *added* benefit of being specially notified of the evidence and other materials to which he or she is already permitted access.

Stinski argues that, even if the discovery duties imposed on the State are facially reciprocal to those imposed on him, his duties of disclosure are greater in light of the largely-unrestricted scope of mitigating evidence. See *Head v. Ferrell*, 274 Ga. 399, 405 (V) (A) (554 SE2d 155) (2001) ("[m]itigating evidence is *anything* that might persuade a jury to impose a sentence less than death"). However, the scope of non-statutory aggravating evidence is similarly broad. See *Lewis v. State*, 279 Ga. 756, 758-759 (2) (620 SE2d 778) (2005) (it is "well-settled that in a sentencing trial the State may present evidence of a defendant's bad character, including previous convictions and non-adjudicated offenses"). We hold that any difference in the scope of mitigating evidence and the scope of non-statutory aggravating evidence is too minimal to be of constitutional significance on the question of reciprocity of discovery. See *Wardius*, 412 U. S. 470. We also reject Stinski's contention that his constitutional right to present mitigation evidence is violated by the amended discovery procedure because he is not prevented from presenting mitigation evidence but, instead, must simply disclose that evidence to the State shortly before actually presenting it in court.

(c) Stinski argues that the amended discovery statute constitutes an ex post facto law and a bill of attainder. The amended statute is not an ex post facto law because it affects purely procedural rights and duties. See *Cannon v. State*, 246 Ga. 754 (1) (272 SE2d 709) (1980). See also 1 LaFave, Substantive Criminal Law, § 2.4 (a), p. 160 (2d ed. 2003). We find meritless Stinski's argument that the amended statute constitutes a bill of attainder. See id. at § 2.4 (d), p. 167 (bill of attainder refers to legislative imposition of punishment on specific persons or on class of persons without any judicial proceeding).

(d) Stinski argues that his additional discovery duties under the amended discovery procedure did not arise through a valid waiver of his rights. However, as we noted at the outset, the additional discovery requirements were imposed on him by the General Assembly, making an inquiry into his waiver of rights irrelevant.

5. Stinski argues that the trial court erred by denying his motion to quash the indictment based on the participation of an allegedly-ineligible grand juror with arrest powers. This Court has held that a law enforcement officer with arrest powers must be disqualified from service on a *traverse* jury upon motion of a criminal defendant. *Hutcheson v. State*, 246 Ga. 13 (1) (268 SE2d 643) (1980). We have never extended the rule of automatic exclusion of law enforcement officers to grand juries and we decline to do so now.

*Judgment affirmed. Sears, C. J., Benham, Carley, Thompson and Hines, JJ., and Judge Lamar W. Sizemore, Jr., concur. Melton, J., not participating.*

DECIDED FEBRUARY 5, 2007 —
RECONSIDERATION DENIED MARCH 27, 2007.

*Jackson & Schiavone, Michael G. Schiavone, Steven L. Sparger, Willie T. Yancey, Jr.,* for appellant.

*Spencer Lawton, Jr., District Attorney, David T. Lock, Gregory M. McConnell, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General,* for appellee.