700 S.E.2d 888 (2010)
REYNOLDS
v.
The STATE.
No. A10A1234.
Court of Appeals of Georgia.
September 10, 2010.
*889 Lawrence W. Daniel, for appellant.
Brian K. Fortner, Solicitor-General, Katherine L. Iannuzzi, Asst. Solicitor-General, for appellee.
PHIPPS, Presiding Judge.
A jury found Carolyn Reynolds guilty of hit-and-run[1] and less safe DUI.[2] Challenging the sufficiency of the evidence underlying her convictions, Reynolds contends that the state failed to show that she had driven any vehicle during the pertinent period. When an appellant challenges the sufficiency of the evidence to support the conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3] Because the evidence, so viewed, did not authorize the guilty verdicts, we reverse.
The state presented its case through the testimony of three Douglasville police officers and a tow truck driver. One officer, Adam Forrester, recounted that at about 1:45 a.m. on September 15, 2007, he and another officer, Tommy Deming, were working an accident scene on Interstate 20. They summoned a tow truck, and the dispatched tow truck driver loaded the wrecked vehicle onto his truck for hauling to an impound lot.
Forrester recalled that as he and Deming were completing their work there, "somebody" approached them and reported that, as he was traveling on the interstate, his car had just been sideswiped by a car that did not stop. According to Forrester, this reporting individual further described the make, model, color, and general traveling direction of the fleeing car.[4]
*890 Forrester and Deming went to the reported hit-and-run scene. Deming recalled at trial that a car there had been "hit in the rear end" and that someone at the scene described to him the make, model, and color of the alleged fleeing vehicle.[5] A description of such a vehicle was broadcast over police radio.
Meanwhile, as the tow truck driver was on his way to the impound lot with the wrecked vehicle, he saw a silver Toyota Corolla alongside the interstate, and within about six or seven feet of the Corolla was a woman who seemed to be trying to wave him to a stop. He recalled seeing no other cars parked nearby on the interstate. The tow truck driver testified that he did not stop, but continued to the impound lot and delivered the wrecked car. Afterward, he went to a nearby store for a cup of coffee and saw the same woman he had seen on the interstate about 25 minutes earlier. She was using a pay phone in the parking lot of a Texaco store, which was just off an Interstate 20 ramp, about a half-mile from where he had first passed her.
Shortly after noting the woman at the pay phone, the tow truck driver received a call to haul off the interstate the silver Toyota Corolla he had seen earlier that night. According to Deming, who had gone to the location of the Corolla, "[t]here was damage to I believe the front passenger side of the vehicle." The tow truck driver testified that, when he backed up his truck to load the Corolla, the officer there informed him that he did not know where the keys for the Corolla were, nor did he know "where the people are that had the car." He responded to the officer, "[W]ell I do. I saw her walk away from the car and now she's up at the Texacoor at the Texaco at the pay phone."
Reynolds did call 911 from a pay phone at a Texaco store in Douglasville that night. The officer with the Douglasville Police Department who responded to her emergency call at about 2:50 a.m. testified that, in interviewing Reynolds, he surmised that, although she was stating that her car had been stolen, what she really wanted was to be taken to her home. He also noted that an odor of alcohol was emanating from her breath; she was unable to keep her balance; her speech was slurred; and she was loud at times, demonstrating mood swings. According to this officer, who had been trained to detect signs of intoxication, Reynolds seemed intoxicated. The officer summoned Forrester, who was trained in DUI detection and also certified to operate the Intoxilyzer 5000 breath testing machine.
According to Forrester, Reynolds complained to him that "[t]he car she was driving" had been stolen. While talking with Reynolds, Forrester noted an odor of alcohol coming from Reynolds's person; she appeared uneasy on her feet; and her eyes appeared watery and bloodshot. Reynolds admitted to having consumed a beer earlier, but denied that she had recently been driving. Based upon what the tow truck driver had told the officer at the scene of the parked Corolla, however, Forrester suspected that Reynolds had recently driven that car. Forrester asked Reynolds to submit to field sobriety tests, and she agreed. Based on her performance on a horizontal gaze nystagmus test, a walk and turn test, and a one leg stand test, Forrester determined that she was under the influence of alcohol. Reynolds was arrested for less safe DUI. She declined Forrester's request to undergo a state-administered test of her breath.
At the close of the state's evidence, Reynolds did not call any witness and did not testify.
1. Hit-and-run. OCGA § 40-6-270(a) pertinently provides,
The driver of any vehicle involved in an accident resulting in injury to or the death of any person or in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of the accident or shall stop as close thereto as possible and forthwith return to the scene of the accident.... The driver shall in every event remain at the scene of *891 the accident until fulfilling the requirements of this subsection.
Reynold argues that the state failed to establish that the Corollawhich the state theorized she had been driving[6]was involved in any hit-and-run incident. We agree.
Forrester and Deming recounted that they responded to a reported hit-and-run incident; they arrived to find at least one victim and one vehicle, which had rear-end damage; and they were given descriptions of an alleged fleeing vehicle. However, both officers testified that they had not witnessed the reported hit-and-run incident. Thus, they had no personal knowledge of any hit-and-run incident, no personal knowledge of how, where, or when the vehicle they saw had received its rear-end damage, and no personal knowledge of what any fleeing vehicle looked like or its travel direction. To the extent their testimony was presented for the truth of these matters, such testimony was utter hearsay and consequently lacking in probative value.[7]
Furthermore, the record is void of any evidence that Reynolds owned the Corolla, was authorized to drive it, or even had keys to it. The state presented no competent evidence as to the amount of time the Corolla had been parked on the interstate and no evidence as to how or when it had received damage to its front passenger side. That Reynolds was seen walking away from that vehicle and later determined to be intoxicated when she reported that the car she had been driving was stolen fails to authorize a finding beyond a reasonable doubt that she therefore had been the driver of a vehicle involved in a hit-and-run incident.[8]
2. DUI less safe. Reynolds argues, "If the State did not provide proof that the Toyota Corolla involved in the hit and run vehicle was Appellant's vehicle, then the State cannot prove that she was driving. If she was not driving, then she could not have been DUI."
To be guilty of the offense of DUI less safe, one must "drive or be in actual physical control of any moving vehicle" while under the influence of alcohol to the extent that it is less safe for the person to drive.[9]
There are a number of decisions in which DUI convictions have been upheld on circumstantial evidence, against the defendant's assertion that the evidence failed to prove that he was the driver of the car. However, in all those cases, the evidence revealed specific facts supporting the State's contention that the defendant was indeed the driver.[10]
In some of those cases, the accused admitted driving a vehicle during the pertinent time period.[11] In other cases affirming convictions on circumstantial evidence, there were other indicia that the accused had recently operated the vehicle at issue.[12] And in still *892 other cases, the circumstantial evidence included indicia of ownership such as registration of the vehicle in the accused's name.[13]
This type of evidence was lacking in this case. The sum of the competent evidence identifying Reynolds as the driver of any car was that about an hour before police determined that she was intoxicated, she was seen alongside an interstate, about six or seven feet from a damaged Corolla. The state presented no competent evidence regarding when the Corolla was last driven or how long the vehicle had been sitting on the side of the interstate. And although Forrester testified that Reynolds told him that night that "[t]he car she was driving" had been stolen, the record fails to show when Reynolds had last driven or otherwise been in actual physical control of any moving vehicle. As stated above, the record contains no evidence that Reynolds owned the Corolla, had authority to drive the car, or had a key to it. Given this record, we conclude that the evidence was insufficient to show beyond a reasonable doubt the DUI element of "drive or be in actual physical control of any moving vehicle" (while under the influence of alcohol to the extent that it is less safe for the person to drive).[14] Reynolds's DUI conviction must be reversed.[15]
Judgment reversed.
MILLER, C.J., and JOHNSON, J., concur.
NOTES
[1] OCGA § 40-6-270.
[2] OCGA § 40-6-391(a)(1).
[3] Jackson v. Virginia, 443 U.S. 307, 319(III)(B), 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original).
[4] See, however, Stinski v. State, 281 Ga. 783, 784(1), n. 1, 642 S.E.2d 1 (2007) (2007) (although testimony by a police officer relating what a nontestifying individual told the officer supports a factual determination that the officer heard that individual's statement, such hearsay is not admissible evidence for the truth of the matter asserted by the nontestifying individual); Roebuck v. State, 277 Ga. 200, 204(1), 586 S.E.2d 651 (2003) (noting "Georgia's long-standing rule that inadmissible hearsay lacks probative value even though the opposing party does not object to its introduction").
[5] See, however, Stinski, supra (regarding hearsay); Roebuck, supra (same).
[6] Reynolds was tried on uniform traffic citations filed against her that charged hit-and-run and less safe DUI, thus the record contains neither accusation nor indictment. The state's closing argument made it clear, however, that the state sought to show that the silver Toyota Corolla was the vehicle involved in the reported hit-and-run.
[7] See generally Stinski, supra (regarding hearsay); Roebuck, supra (same).
[8] See Jackson v. Virginia, supra.
[9] OCGA § 40-6-391(a) (emphasis supplied).
[10] Krull v. State, 211 Ga.App. 37, 39(1), 438 S.E.2d 152 (1993).
[11] See, e.g., Silvers v. State, 297 Ga.App. 362, 364, 677 S.E.2d 410 (2009) (defendant admitted that he owned the vehicle and was driving it in the area of the reported incident approximately one hour before the "be on the lookout" was issued); Coates v. State, 216 Ga.App. 93(1), 453 S.E.2d 35 (1994) (evidence showed that defendant owned the car, was in the driver's seat when the officer arrived at the vehicle parked in the right through-lane of traffic, and defendant admitted to officer that she had been driving); State v. Hill, 178 Ga.App. 669, 344 S.E.2d 491 (1986) (when the investigating officer asked how the accident occurred, defendant answered, "I swerved to miss a dog.").
[12] See, e.g., Brockington v. State, 245 Ga.App. 571, 572-573(1), 538 S.E.2d 474 (2000) (evidence showed that, immediately after collision, defendant was observed partially in driver's seat and appeared to be attempting to slide into passenger seat; defendant's nephew was initially completely in back seat and appeared to be almost lying down; and while other driver talked to defendant, defendant slid over to passenger seat and nephew got completely into driver's seat); Henson v. State, 205 Ga.App. 419(1), 422 S.E.2d 265 (1992) (after an automobile collision, defendant and another man exited the vehicle and fled the scene; no one else occupied that vehicle; both men were soon apprehended; defendant was in possession of keys to vehicle; investigating officers found blood and cracked windshield on passenger side of car; and man who had fled with defendant was bleeding from a cut on his head); Melendy v. State, 202 Ga.App. 638(1), 415 S.E.2d 62 (1992) (when investigating officer asked defendant, after having observed the defendant pouring gasoline into the tank of car stopped in the road, what had happened, defendant answered that he was on his way home from a football game when the car ran out of gas; there was no one else in or near the car; and after being arrested for DUI told officer there was no one who could move car); Jones v. State, 187 Ga.App. 132-133(1), 369 S.E.2d 509 (1988) (car was not on scene 20 to 30 minutes earlier; officer found defendant slumped over the steering wheel at a railroad crossing, with the engine running and transmission in "drive"); Phillips v. State, 185 Ga.App. 54(1), 363 S.E.2d 283 (1987) (officer found defendant behind the steering wheel, parked in the middle of the road, with the engine running and the lights on).
[13] See, e.g., Coates, supra; Frye v. State, 189 Ga.App. 181, 375 S.E.2d 101 (1988) (officer observed defendant staggering alongside a roadway and wearing soiled clothing; approximately 100 yards down the road was an overturned car registered to the defendant).
[14] See Krull, supra at 40, 438 S.E.2d 152 (state failed to meet burden of proof, where there was no testimony that the keys were in defendant's possession; no previous observation of the car in motion; no evidence that defendant had attempted to start it; the car was inoperable; the engine was not running; no testimony indicating that it had been driven recently, such as a warm engine or hood; no evidence that the car was registered in defendant's name; uncontradicted evidence showed that it was not defendant's car and that he was not permitted to drive it).
[15] Jackson v. Virginia, supra.