## A00A1330. ADAME v. THE STATE.
(534 SE2d 817)

ELDRIDGE, Judge.

Yolanda Adame appeals from a Douglas County jury's verdict finding her guilty of aggravated assault and second degree criminal damage to property. We affirm her conviction.

Viewed in a light to uphold the jury's verdict,[1] the charges arose from an incident wherein Adame, while intoxicated, became enraged

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

at her boyfriend, J. M., for an insult he leveled at her housekeeping skills. As a result, Adame kicked in J. M.'s china cabinet. When he tried to stop further damage by grabbing Adame's arms and wrestling her onto a sofa, Adame pulled away. She retrieved an aluminum baseball bat from an adjacent porch, with which she reentered the house and hit J. M. in the head, tearing off half of his ear; she exited into the carport and broke out several windows on J. M.'s 1996 Ford Mustang; she again reentered the house and located J. M. in the bathroom trying to staunch the bleeding; she beat him in the back with the bat; then, she again exited into the carport and broke out the remainder of the Mustang's windows. *Held*:

1. The trial court refused to permit expert testimony regarding the battered woman syndrome, and Adame challenges this ruling. We find no error. "The battered woman syndrome describes a series of common characteristics that appear in women who are abused physically and psychologically over an extended period of time by the dominant male figure in their lives." (Citation and punctuation omitted.) *Johnson v. State*, 266 Ga. 624, 626 (469 SE2d 152) (1996). The syndrome does not stand as a separate defense but rather is evidentiary support for a claim of justification under OCGA § 16-3-21 (d). *Selman v. State*, 267 Ga. 198, 200-201 (475 SE2d 892) (1996). An expert's testimony is admissible to assist the jury in evaluating the victim's defense of self-defense by explaining why a person suffering from battered woman syndrome "would not leave her mate, would not inform police or friends, and would fear increased aggression against herself" so as to justify her actions toward her mate. *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981); *Smith v. State*, 268 Ga. 196, 198 (486 SE2d 819) (1997).

Here, Adame did not testify at trial. Instead, to establish the pattern of battering necessary for admission of evidence of the battered woman syndrome, Adame relied upon testimony from her former employer and two of Adame's friends that sometime prior to the incident in question they saw Adame with bruises on her body. However, none of these witnesses had personal knowledge of how the bruises were inflicted; there was no evidence that the bruises were the result of battering by J. M.; Adame did not testify that the bruises were the result of a battering by J. M.; no witness had ever seen J. M. hit Adame; there was no evidence presented that J. M. ever hit Adame; J. M. presented undisputed testimony that he had never hit Adame; and Adame's son, who lived with the couple, presented undisputed testimony that he had never seen J. M. hit his mother.

So, "[t]his is in no manner a battered woman syndrome case." *Selman v. State*, supra at 200. At trial, no evidence established a pattern of abuse/battering by J. M. against Adame. Thus, there was no

evidence that J. M. was an "abusive mate" so as to make relevant testimony regarding the battered woman syndrome. See *Smith v. State*, 268 Ga. at 198-199. To the contrary. The evidence shows that Adame was an aggressor in her relationship with J. M., as well as in her relationships with other males. See Division 2, infra. Absent any history of J. M.'s physical abuse of Adame so as to engender a "reasonable belief in the imminence of the victim's use of unlawful force," the battered woman defense is inapplicable. *Smith v. State*, 268 Ga. at 199; *Nguyen v. State*, 271 Ga. 475, 476 (2) (520 SE2d 907) (1999). Accordingly,

> [w]e find that this evidence does not rise to the level of battering necessary to rely on the battered person syndrome as a basis for a self-defense claim. Therefore, the trial court did not err in preventing the defendant's expert from giving her opinion that [Adame] suffered from the battered person syndrome.

*Mobley v. State*, 269 Ga. 738, 740-741 (505 SE2d 722) (1998).[2]

2. Next, Adame challenges the admission of similar transaction evidence. "Absent an abuse of discretion, we will not disturb a trial court's determination that similar transaction evidence is admissible. [Cit.]" *Arnold v. State*, 236 Ga. App. 380, 382 (2) (511 SE2d 219) (1999). We find no such abuse here.

(a) A similar transaction hearing was held pursuant to *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991). The State presented evidence of prior incidents of domestic violence wherein Adame would get drunk, become enraged, and physically attack the male with whom she was living at the time. Adame would utilize whatever object was handy in her residence, i.e., baseball bat, trophy, metal spoon, wine glass, skillet, or knife. She would strike out at the male, often hitting him on the head. Serious injury frequently resulted, with the male having to be hospitalized. The prior incidents of domestic violence were close in time to the incident of domestic violence in question, and the State presented this evidence for the appropriate purpose of demonstrating Adame's course of conduct and bent of mind.

---

[2] Adame also argues that evidence she was hit by a former boyfriend, D. Q., two years prior to the incident in question was sufficient to permit the introduction of expert testimony regarding the battered woman syndrome as justification for her violent actions toward J. M. However, we will not consider this argument since it was not made at trial as a basis for the admission of battered woman syndrome evidence. "It is well settled that a reason urged by enumeration of error on appeal which is different from that urged below will not be considered for the first time on appeal." (Citation and punctuation omitted.) *Estep v. State*, 238 Ga. App. 170, 172-173 (518 SE2d 176) (1999).

"In determining the admissibility of similar transaction evidence, the court should focus on the similarities, not the differences, of the two occurrences." *Dunbar v. State*, 228 Ga. App. 104, 109 (491 SE2d 166) (1997), citing *Farley v. State*, 265 Ga. 622 (458 SE2d 643) (1995). Here, all of the incidents were committed by Adame against her male live-in partners. All of the incidents occurred while Adame was intoxicated and enraged. All of the incidents involved Adame's use of household objects as weapons. All of the incidents occurred at Adame's residence. All of the incidents resulted in serious injury to Adame's male partners. Thus, this evidence was sufficiently similar to establish a logical connection between the independent acts and the charged offense so that proof of one tended to prove the other. *Williams v. State*, 261 Ga. at 642.

Further,

> in the present case we hold that evidence of [Adame's] prior [assaults], which [were] sufficiently similar to the offense charged as to establish a logical connection between the two, was relevant to rebut [her] claim of justification by showing [her] bent of mind to commit the present offense. It follows that the evidence was properly admitted for that limited purpose.

*Menefee v. State*, 270 Ga. 540, 543 (512 SE2d 275) (1999).

(b) One incident of domestic violence between Adame and R. S., the man she married five months after the incident in question, resulted in the death of R. S. and was held inadmissible as a similar transaction by the trial court, which found that its probative value was outweighed by its prejudicial nature. However, the trial court did permit the introduction of other incidents of violence that Adame, while intoxicated, perpetrated against R. S. during their approximately seven months together before his death. For example, Adame hit R. S. over the head with a large metal spoon and then hit him in the head with a wine glass. Adame threw a large rock at R. S.'s car and then threw bleach on his clothes and cut his clothes with scissors. Because R. S. was deceased at the time of trial, the trial court admitted such evidence under the necessity exception to the hearsay rule and permitted testimony from the deceased's ex-wife and his co-worker. Adame challenges the trial court's ruling, contending that such evidence was inadmissible hearsay. We do not agree.

The two requirements for the admission of hearsay under the "necessity" exception are necessity/unavailability and particularized guarantees of trustworthiness. *Ward v. State*, 271 Ga. 648, 649-650 (520 SE2d 205) (1999). That R. S. is deceased satisfies the criterion that the witness be "unavailable." Further, the evidence was relevant

as a similar transaction for the appropriate purpose as discussed, supra, and R. S.'s statements regarding Adame's violent actions toward him are the most probative form of such evidence. Id. at 650. Accordingly, the first prong of the exception is satisfied. Id.

Also, the evidence exhibits sufficient reliability to satisfy the second prong of the necessity exception. "Uncontradicted statements made to one in whom the deceased declarant placed great confidence and to whom [he] turned for help with [his] problems are admissible under the necessity exception. [Cits.]" *Ward v. State*, supra; *Fetty v. State*, 268 Ga. 365, 368 (489 SE2d 813) (1997). Both R. S.'s ex-wife and his co-worker testified without contradiction that R. S. came to them in desperation because of Adame's violent conduct. In addition, the State introduced evidence corroborating the testimony of R. S.'s ex-wife and co-worker, i.e., photographs showing the serious injury to R. S.'s head resulting from Adame's attack with the spoon and the wine glass, R. S.'s bleach-marked and cut clothing, a letter by R. S. to his co-worker written shortly after one attack expressing thanks for letting him stay at the co-worker's home and declaring his love for Adame and his intent "to give her one more chance if she would control her self," and entries in a journal R. S.'s ex-wife kept contemporaneously with the violent events as they occurred and noting each event in detail. Accordingly, "we concur with the trial court's conclusion that the deceased declarant's statements to the two witnesses were coupled with circumstances that attribute verity to it." *Ward v. State*, supra at 651 (2). The trial court did not err when it admitted the hearsay testimony.

3. J. M. testified at trial that he had never hit a woman and that he had not been accused of such. Adame sought to impeach J. M.'s testimony with (a) the pleadings in a 1981 divorce action and (b) a 1980 accusation for simple battery. The trial court refused to admit such evidence for impeachment purposes. We agree.

(a) Statements made by J. M.'s former wife in the 1981 divorce pleadings would not be admissible against J. M. in the trial of a criminal case. *134 Baker Street, Inc. v. State*, 172 Ga. App. 738, 741 (5) (324 SE2d 575) (1984). Such statements should not be treated as evidence in a criminal case unless shown to have been authorized by the party against whom they are sought to be introduced. Id. Further, as a matter of fact, the divorce pleadings do not accuse J. M. of hitting his ex-wife or otherwise impeach his testimony. At trial, the defense attorney conceded that he could find no such reference in the pleadings.

(b) An accusation is not competent evidence to disprove the facts to which a witness testifies. *Williams v. State*, 181 Ga. App. 693 (353 SE2d 563) (1987). "[M]erely showing an accusation of the misdemeanor offense was insufficient for that purpose." Id. at 695.

Adame argues that the accusation may not show that J. M. had actually hit a woman, but it showed that he had been *accused* of such, in contradiction to his trial testimony. However, whether J. M. had ever been *accused* — perhaps falsely since the accusation was nol prossed — of hitting a woman 17 years ago was wholly immaterial to the issues on the trial of this case. Such allegations, alone and completely unsubstantiated, would not go to the issue of Adame's guilt of the crime as charged or to the merits of Adame's justification defense, since the unsubstantiated accusation would not serve to support Adame's claim that she had a reasonable fear of imminent harm from J. M. "[A] witness may not be impeached because of a discrepancy as to a wholly immaterial matter." (Citations and punctuation omitted.) *Hightower v. State*, 227 Ga. App. 74, 77 (487 SE2d 646) (1997).

4. The evidence did not require a charge on justification insofar as Count 2, criminal damage to property, was concerned.[3] We reject Adame's contention that evidence of justification on Count 2 was provided by testimony from Adame's son that Adame told J. M., "if you come any further, I will break the windows out of your car."

(a) The testimony upon which Adame relies was the "self-serving statement of a defendant and was inadmissible hearsay" without probative value; thus, a jury charge based on such statement was not warranted. *Jones v. State*, 271 Ga. 516, 517 (2) (520 SE2d 454) (1999).

(b) Adame's son did not so testify. At trial, the son testified that Adame stated, "if you don't stop I'll break the windows out of your car." The record shows that the statement was made after Adame had kicked in J. M.'s china cabinet and in response to J. M.'s attempts to restrain her on the sofa. Adame's son also testified — repeatedly — that J. M. never hit Adame. He testified that J. M. did not follow Adame onto the carport and that "the only thing I remember is her walking outside and hearing the car windows break." J. M.'s testimony went uncontroverted that he did not hit Adame; that Adame was intoxicated; and that Adame came after him and his car with a baseball bat because she was enraged. "[A] charge on the defendant's sole defense is mandatory *if there is some evidence to support the charge*." (Emphasis in original.) *Hayes v. State*, 261 Ga. 439, 443 (6) (a) (405 SE2d 660) (1991). Here, there was not. "Accordingly, we find no error in the trial court's failure to charge on self-defense" as to Count 2, criminal damage to property. *Jones v. State*, supra at 517 (2).

5. Our decision in Division 1, supra, renders meritless Adame's

---

[3] The trial court gave a thorough charge on justification/self-defense, but limited the jury's consideration of such to Count 1, aggravated assault.

contention that the trial court erred in failing to charge the jury on the battered woman syndrome.

6. "Contrary to [Adame's] contentions, the trial court did not introduce new evidence into the case, confuse the jury, or commit reversible error by instructing the jury on the law related to noncustodial investigatory detention and *Miranda*[4] warnings." *Threatt v. State*, 240 Ga. App. 592, 600 (5) (524 SE2d 276) (1999).

7. Under the First Amendment there exists a right of access to criminal trials on the part of the press and general public. *Globe Newspapers v. Superior Court of Norfolk County*, 457 U. S. 596 (102 SC 2613, 73 LE2d 248) (1982). Accordingly, we find no error in the trial court's refusal to exclude interested members of the public from the similar transactions hearing. Contrary to Adame's contention, the Rule of Sequestration was not implicated, since no witnesses were examined at the hearing. OCGA § 24-9-61.[5]

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED MAY 18, 2000 —
RECONSIDERATION DENIED MAY 31, 2000.

*Leonard Danley*, for appellant.
*David McDade, District Attorney, Stephen L. Corso, Assistant District Attorney*, for appellee.

---

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[5] "[E]ither party shall have the right to have the witnesses of the other party examined out of the hearing of each other." OCGA § 24-9-61.