## S00A1428. JOHNSON v. THE STATE.
### (541 SE2d 357)

THOMPSON, Justice.

Isadore Johnson, Jr., was convicted of, and sentenced for, felony murder, aggravated assault, and possession of a firearm during the commission of a crime, in connection with the shooting death of Anthony Curry. This appeal followed the denial of Johnson's motion for a new trial.[1] We affirm.

Viewing the evidence in a light to uphold the verdict, we find the following: Johnson's ten-year-old son was playing in his front yard when Anthony Curry, who was 15 years old, and two other teenagers walked by. One of the youths hassled Johnson's son, saying he was going to beat him up, and by throwing a bottle at him. Johnson's son

---

[1] Johnson killed Curry on November 15, 1997. He was indicted on January 28, 1998, and charged with malice murder, possession of a firearm by a convicted felon, felony murder, predicated on the underlying felony of possession of a firearm by a convicted felon, cruelty to a child, felony murder, predicated on the underlying felony of cruelty to a child, aggravated assault, felony murder, predicated on the underlying felony of aggravated assault, and possession of a firearm during the commission of a crime. Trial commenced on November 16, 1998, and, three days later, the jury found Johnson not guilty of malice murder, cruelty to a child, and felony murder predicated upon the underlying felony of cruelty to a child; and guilty of the other counts of the indictment. On November 20, 1998, the trial court sentenced Johnson to life in prison for felony murder predicated on the underlying felony of possession of a firearm by a convicted felon, twenty years (concurrent) for aggravated assault, and five years (consecutive) for possession of a firearm during the commission of a crime. The convictions on the remaining counts were vacated. Johnson's timely filed motion for a new trial was denied on February 16, 2000, and he filed a notice of appeal the next day. The case was docketed in this Court on May 11, 2000, and submitted for decision on the briefs on July 3, 2000.

went inside and told Johnson that some kids were bothering him.

Johnson walked to his front porch and told the three youths, who were talking and standing on the street corner, to leave the area. One of the three replied that they were not leaving. Johnson went back inside, put on a shirt and shoes, went outside, and walked to his car.

Johnson had been convicted previously of a felony. Nevertheless, he retrieved a gun from his car and walked toward the youths with the gun in his hand. Johnson slapped Curry on the back of the head and shot Curry in the chest. The bullet pierced Curry's heart and lungs and killed him.

Johnson fled the scene. He turned himself in two days later; but the gun was never found.

At trial, Johnson testified that he never saw any of the youths with a weapon; but he decided to arm himself to talk with the youths. He also testified that he started talking to the youths; that Curry jumped him; and that the gun went off when Curry hit his hand.

1. The evidence was sufficient to enable any rational trier of fact to find Johnson guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The trial court did not err in refusing to sever the charge of possession of a firearm by a convicted felon from the other charges. Inasmuch as it was the predicate felony of one of the felony murder counts, the possession of a firearm by a convicted felon charge was connected to the other charges. *Roundtree v. State*, 270 Ga. 504, 505 (3) (511 SE2d 190) (1999).

3. In his opening statement, the prosecutor told the jury that Johnson had been convicted previously of aggravated assault. Johnson moved for a mistrial, asserting he was prejudiced by the prosecutor's remark. The trial court denied the motion and Johnson assigns error to that ruling.

Inasmuch as Johnson was charged with felony murder predicated upon the felony of possession of a firearm by a convicted felon, the jury was bound to have learned of Johnson's prior conviction sooner or later. See Division 2, supra. Thus, it cannot be said that the prosecutor's remark prejudiced Johnson.

4. Voluntary manslaughter occurs when one kills "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). Involuntary manslaughter requires the commission of an unlawful act other than a felony, OCGA § 16-5-3 (a), or the commission of a lawful act in an unlawful manner. OCGA § 16-5-3 (b). The evidence in this case does not demonstrate that Johnson killed Curry out of a "sudden, violent and irresistible pas-

sion" such as would have arisen in a reasonable person under similar circumstances. *Worthem v. State*, 270 Ga. 469, 471 (509 SE2d 922) (1999). Nor does it show that Curry died as a result of an unlawful act other than a felony, *Jenkins v. State*, 270 Ga. 607, 608 (2) (d) (512 SE2d 269) (1999), or of a lawful act committed in an unlawful manner. Accordingly, it cannot be said that the trial court erred in refusing to charge the jury on the law of voluntary and involuntary manslaughter.

5. Johnson contends the trial court erred in admitting evidence of a prior act — in which he shot and wounded Tracy Jacobs on June 30, 1989 — because it was based upon inadmissible hearsay. We disagree. The evidence was admitted properly under the necessity exception to the hearsay rule.

To satisfy the necessity exception to the hearsay rule, the proponent of the evidence must meet two requirements: (1) necessity, i.e., the declarant is unavailable to testify and his statement is relevant to a material fact and more probative than other evidence that may be offered; and (2) trustworthiness, i.e., the declarant's statement must have particularized guarantees of reliability. *Clark v. State*, 271 Ga. 6, 9 (5) (515 SE2d 155) (1999). Johnson concedes that the first requirement — necessity — was met because Jacobs was dead when this case was tried,[2] and his statements concerning the prior act were relevant to a material fact and more probative than other evidence that might have been procured to prove that fact. See *Morrow v. State*, 272 Ga. 691, 700 (9) (532 SE2d 78) (2000). However, Johnson asserts that particularized guarantees of trustworthiness were missing from Jacobs' statements. And, in this connection, he points out Jacobs did not press charges against him.

The State proved that Johnson shot Jacobs by introducing the testimony of two police officers who had interviewed Jacobs, as well as medical records reflecting a statement which Jacobs made to a physician when he was brought to the hospital. Officer Herron testified that he arrived at the scene of the shooting and found Jacobs with a gunshot wound in the arm; that he spoke with Jacobs at that time and that Jacobs told him that Johnson shot him. Investigator Tuten testified that she met with Jacobs in the course of her investigation and that Jacobs said that Johnson shot him in the arm following an argument. Jacobs repeated this information to the treating physician at the hospital.

Jacobs' statements to the police officers were inherently trustworthy. The statements were made in the course of an official investigation, and Jacobs never disavowed his statements or claimed they

---

[2] Jacobs was stabbed to death by another assailant on September 13, 1991.

were inaccurate. *McKissick v. State*, 263 Ga. 188, 189 (3) (429 SE2d 655) (1993). It cannot be said that the statements lacked credibility simply because Jacobs did not pursue charges against Johnson. See id.

Even if it could be said that Jacobs' statement to the physician lacked indicia of credibility (see *Howard v. State*, 261 Ga. 251, 252 (403 SE2d 204) (1991); *Arnold v. State*, 166 Ga. App. 313, 314 (304 SE2d 118) (1983)), it was merely cumulative. Accordingly, any error in admitting the hospital records was harmless. *Williams v. State*, 256 Ga. 655, 657 (2) (352 SE2d 756) (1987).

6. The trial court did not err in permitting the State to show that Johnson shot William Morgan with a handgun on October 23, 1989.[3] The State presented evidence demonstrating that Johnson shot Morgan, who was unarmed, several hours after he discovered that Morgan had been visiting with Johnson's wife. Since Johnson claimed that he shot Curry accidentally, this evidence was admissible to show Johnson's intent, motive and bent of mind. *Gentry v. State*, 250 Ga. 802, 803 (1) (301 SE2d 273) (1983). That the prior incident involved Johnson's wife, not his son, and that Morgan was shot while he was sitting in a car, not standing on a sidewalk, is of no consequence. See generally *Farley v. State*, 265 Ga. 622, 624 (458 SE2d 643) (1995) (proper focus is on similarities, not differences, of prior and instant crimes).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 22, 2001.

*Quillian, Loncon & Edwards, Michael L. Edwards, Diane M. McLeod*, for appellant.

*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Tammie J. Philbrick, Assistant Attorney General*, for appellee.

---

[3] Johnson was charged with aggravated assault in connection with that prior act; he pled nolo contendere and was sentenced to serve four years on probation.