## S02A0843. YANCEY v. THE STATE.
(570 SE2d 269)

FLETCHER, Chief Justice.

A jury convicted James Yancey of the shooting death of Gregory

---

Ferrell and the aggravated assault of Terrell Lofton.[1] At trial, the trial court admitted the statement of Travis Sloan, the defendant's brother, under the necessity exception to the hearsay rule. The question in this appeal is whether a statement that a suspect makes during an official police investigation has sufficient indicia of reliability to be admissible when the declarant does not testify at trial. Because Sloan made his statement to police while under suspicion for the crimes, we hold that his statement does not have sufficient guarantees of trustworthiness and its admission under the necessity exception to the hearsay rule violated Yancey's constitutional right of confrontation. Accordingly, we reverse.

1. Terrell Lofton and his friend Gregory Ferrell were sitting in Lofton's maroon Delta 88 Oldsmobile on a Saturday afternoon when a light-colored van pulled alongside of them. Lofton turned to his right and asked the driver what he wanted. As Lofton put his key in the ignition, he heard five to seven shots and was hit in the right shoulder. Ferrell, who was in the passenger's seat next to the van, died immediately from gunshot wounds to his chest and abdomen.

While in the hospital, Lofton was shown a photographic lineup and picked out James Yancey as the van's driver. Lofton could not identify the van, but a church van was found that evening in a park two blocks from the defendant's home with its windows knocked out and shell casings from an AK-47 rifle inside. The casings were fired from the same rifle as the shell casings found at the murder scene. Police eventually traced the van, which had the name of the church on its sides, to Travis Sloan, who had received it that afternoon in exchange for $50 worth of cocaine.

To establish the defendant's motive, the State presented evidence that the Oldsmobile's previous owner fought with Yancey earlier in the day. Their fight took place in a small white four-door sedan and ended when Yancey crashed into a fence. Police found the wrecked car, which belonged to Yancey's mother, one block from the park where they found the abandoned van. After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found the defendant guilty of the crimes charged.[2]

2. At a pretrial hearing, the State moved for the admission of

---

[1] The shooting occurred on August 22, 1998, and the grand jury indicted Yancey on December 17, 1999. On June 9, 2000, the jury found him guilty and the trial court sentenced him to life imprisonment on the murder charge and twenty years imprisonment, to run concurrently, on the aggravated assault charge. Yancey filed a motion for new trial on June 15, 2000, which the trial court denied on December 13, 2001. Yancey filed a notice of appeal on January 7, 2002. The case was docketed in this Court on February 21, 2002, and submitted for decision without oral arguments on April 15, 2002.

[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Travis Sloan's statement under the necessity exception to the hearsay rule. The defendant objected on the grounds that the State had failed to prove that Sloan was unavailable and his statement was trustworthy because Sloan was a suspect when he talked to police and gave them information to deflect attention from himself to others. The trial court ruled that the statement was admissible, overruled the defendant's objection that its admission violated his constitutional right of confrontation, and later denied his motion for new trial. The trial court found that the statement was reliable because (1) Sloan made the statement to police during an official investigation; (2) he signed each page of the statement, affirming its truth; (3) he voluntarily gave the statement absent threats or coercion and with the benefit of *Miranda*[3] warnings; and (4) he did not recant his statement until the hearing on the motion for new trial.

Although the State attempted to locate Sloan before trial, its investigator was unable to find him; as a result, the State introduced his statement through the testimony of the police detective who interviewed him. Detective D.B. Mathis testified that Sloan voluntarily came to the homicide office a week after the shooting, but was quiet and reluctant to talk. Mathis explained Sloan's rights under *Miranda v. Arizona*, and Sloan completed a waiver of counsel form that the homicide office uses "if we suspect someone might be involved in a crime." When asked how the reluctant witness came to make a statement, Mathis testified:

> I told Mr. Travis Sloan that right now everything points to you as being the one that last had the van. . . . And he sat there for a minute, and he thought about it, and then he began to talk about what had took place. . . . He understood that he didn't have to talk. But at the same time, I let him know that everything is pointing at him and he could end up possibly going to jail if he didn't want to talk about it, because . . . the last person I interviewed was clear that they gave the van to Travis on Godbey Road.

In his statement, Sloan said that he borrowed a blue and white church van from L.C. around 2:30 or 3:00 p.m. on Saturday and drove to his grandmother's house. "My brother James asked me could he use[ ] the van and I gave him the keys to use the van. He then got in the van and drove off." Sloan said that after the shooting Yancey said that he and "Tweet" shot up the van and got rid of it. Sloan also said that James wrecked their mother's car: "He told me he went to a location to buy some weed (marijuana). He said a guy tried to rob him

---

[3] See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

and they started fighting inside the vehicle and he wrecked." The State read the statement into evidence during the detective's testimony, and the assistant district attorney read it a second time during closing argument.

(a) OCGA § 24-3-1 (b) provides that "[h]earsay evidence is admitted only in specified cases from necessity." We have interpreted this statutory provision as creating a residual exception to the hearsay rule.[4] To be admissible under this exception, the party presenting the evidence must prove that the declarant is unavailable to testify at trial, the declarant's out-of-court statement is relevant to a material fact and more probative on that fact than other available evidence, and the statement shows particular guarantees of the trustworthiness.[5] The court must consider the totality of the circumstances that surround the making of the statement to determine its reliability.[6] "The test is whether 'the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility.' "[7]

(b) The Sixth Amendment of the United States Constitution gives the accused the right "to be confronted with the witnesses against him."[8] Encompassed in this provision is the defendant's right to cross-examine the witnesses against him.[9] The right to confront and cross-examine adverse witnesses advances the goal of "having the accused and accuser engage in an open and even contest in a public trial . . . by ensuring that convictions will not be based on the charges of unseen and unknown — and hence unchallengeable — individuals."[10]

When a defendant raises a Confrontation Clause challenge to the admissibility of an out-of-court statement, the analysis is similar to part of our state's test for admissibility under the necessity exception in that the prosecution must establish that the hearsay statement bears sufficient indicia of reliability.[11] When the evidence falls

---

[4] See *Higgs v. State*, 256 Ga. 606, 607 (351 SE2d 448) (1987) (statutory provisions in OCGA §§ 24-3-3 to 24-3-14 enumerating 12 types of hearsay exception are not exhaustive). See generally Albert M. Pearson III, Georgia's Necessity Exception: An Analysis and Critique, Verdict 42 (Spring 2002) (criticizing the necessity exception as a "super-exception — a rule of first rather than last resort").

[5] See *Chapel v. State*, 270 Ga. 151, 155 (510 SE2d 802) (1998).

[6] See id.

[7] See id. (quoting *Idaho v. Wright*, 497 U. S. 805 (110 SC 3139, 111 LE2d 638) (1990)).

[8] See U. S. Const. amend. VI; see also Ga. Const., art. I, sec. I, para. XIV (1983) ("Every person charged with an offense against the laws of this state . . . shall be confronted with the witnesses testifying against such person.").

[9] See *Pointer v. Texas*, 380 U. S. 400, 404 (85 SC 1065, 13 LE2d 923) (1965); *Douglas v. Alabama*, 380 U. S. 415, 418 (85 SC 1074, 13 LE2d 934) (1965).

[10] See *Lee v. Illinois*, 476 U. S. 530, 540 (106 SC 2056, 90 LE2d 514) (1986).

[11] See *Idaho v. Wright*, 497 U. S. at 814-815; *Higgs*, 256 Ga. at 607.

within a firmly rooted hearsay exception, reliability can be inferred; otherwise, the prosecution must show that the statement has "particularized guarantees of trustworthiness."[12]

(c) There are two types of cases relevant to the issue of the reliability of Travis Sloan's out-of-court statement to police: those involving the admissibility of hearsay evidence under this state's evidentiary rules and those further addressing whether the admission of the hearsay evidence violated the defendant's constitutional rights under the federal Confrontation Clause. In the first line of cases, we generally have concluded that an out-of-court statement is admissible under our necessity exception to the hearsay rule based primarily on the fact that the declarant gave the statement during an official police investigation.[13] These cases defy easy analysis.[14] Many involve a spouse who, immediately after the crime is committed, gives a statement to investigators that incriminates his or her spouse, then invokes the marital privilege to avoid testifying at trial.[15] Other cases have involved a victim,[16] eyewitness,[17] or peripheral participant in the crime who is unavailable at trial due to his or her disappearance or death.[18]

We have struggled with what weight to give the "official investigation" factor, recently concluding that a spouse's out-of-court statement was not trustworthy as a matter of law simply because it was told to police officers during an official investigation.[19] Instead, it

---

[12] See *Ohio v. Roberts*, 448 U. S. 56, 66 (100 SC 2531, 65 LE2d 597) (1980).

[13] See, e.g., *Perkins v. State*, 269 Ga. 791, 795-796 (505 SE2d 16) (1998) (admitting wife's statement about husband's demeanor and display of murder weapon because made to police within two hours of her observations). But see *Smith v. State*, 266 Ga. 827, 830 (470 SE2d 674) (1996) (concluding that victim's statements to police lacked a guarantee of trustworthiness despite their consistency and fact they were made within two days of fire).

[14] See generally Paul Vignos, The New "Necessity Exception" to the Hearsay Rule in Georgia: A New Rule of Inclusion?, 16 Ga. St. U. L. Rev. 573 (2000).

[15] See *Quijano v. State*, 271 Ga. 181, 184-185 (516 SE2d 81) (1999); *Perkins*, 269 Ga. at 795; *Luallen v. State*, 266 Ga. 174, 178 (465 SE2d 672) (1996); *Drane v. State*, 265 Ga. 663, 664 (461 SE2d 224) (1995); *Higgs*, 256 Ga. at 608; Pearson, supra note 4, at 24 (suggesting that a waiver analysis should apply in marital privilege cases).

[16] See *Smith*, 266 Ga. at 830-831 (holding harmless error to admit burn victim's statements to arson investigators); *McKissick v. State*, 263 Ga. 188 (429 SE2d 655) (1993) (admitting murder victim's statements about her husband's prior kidnapping of her); see also *Johnson v. State*, 273 Ga. 345, 347 (541 SE2d 357) (2001) (admitting statements to police by victim of defendant's prior act).

[17] See *Holmes v. State*, 271 Ga. 138, 140 (516 SE2d 61) (1999) (admitting statements of two men who participated in fight and identified defendant as the shooter).

[18] See *White v. State*, 268 Ga. 28, 30-31 (486 SE2d 338) (1997) (admitting statement given to police by person who loaned murder weapon to defendant).

[19] See *Quijano*, 271 Ga. at 185 (holding wife's hearsay statement to police admissible because given in official murder investigation, she had no motive to lie, and she never retracted her story). Compare id. at 188 (Sears, J., concurring specially) (disagreeing that wife's speaking to police was an indicia of reliability when declarant said she did not trust the officers and she was afraid they would incarcerate her if she did not implicate her hus-

must be reviewed in light of the surrounding circumstances on a case-by-case basis. Among the relevant factors to consider are whether the declarant had a motive to lie, the spontaneity of the statement, and the consistent repetition of the statement.[20] Although our appellate courts have sometimes relied on evidence that corroborates the out-of-court statement as an indicia of reliability,[21] the existence of corroborating evidence is more properly considered in deciding whether any error in admitting the statement was harmless.[22]

In the second line of cases, we have evaluated whether the admission of an accomplice's or codefendant's out-of-court statements made during an official police investigation violated a defendant's constitutional right to confront the witnesses against him.[23] On this issue, the United States Supreme Court has consistently recognized that a codefendant's confession is presumptively unreliable concerning the defendant's conduct or culpability "because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another."[24] Following this approach, this Court held in *Barksdale v. State* that an accomplice's videotaped statement made while in police custody was inadmissible as a prior inconsistent statement when the accomplice refused to answer any questions during the trial.[25] Because the declarant made the statement while in custody, we concluded that it was not made under circumstances showing particular guarantees of trustworthiness and its admission into evidence violated the defend-

---

band).

[20] See id. at 185-186 (wife's statement deemed trustworthy because declarant had no motive to lie); *Luallen*, 266 Ga. at 179 (husband's statement that wife killed niece made as soon as husband entered the sheriff's office with defendant and sergeant asked if he could help them). See generally Paul S. Milich, Courtroom Handbook on Georgia Evidence 213-214 (1999).

[21] See *Luallen*, 266 Ga. at 179; see also *Adame v. State*, 244 Ga. App. 257, 261 (534 SE2d 817) (2000) (relying on corroborating evidence as an indicator of reliability).

[22] See *Idaho v. Wright*, 497 U. S. at 822-823 (rejecting state's contention that evidence corroborating truth of hearsay statement supports finding of trustworthiness in Confrontation Clause analysis); *Dix v. State*, 267 Ga. 429, 431 (479 SE2d 739) (1997) (finding admission of victim's statements to divorce attorney harmless error based on other evidence corroborating same episode of husband's violence); *Roper v. State*, 263 Ga. 201, 203 (429 SE2d 668) (1993) (presence of corroborating evidence made any error in admission of hearsay evidence harmless).

[23] See *Livingston v. State*, 268 Ga. 205, 210-212 (486 SE2d 845) (1997); *Barksdale v. State*, 265 Ga. 9, 12-13 (453 SE2d 2) (1995); see also *Brooks v. State*, 271 Ga. 698 (523 SE2d 866) (1999) ("introduction of a non-testifying joint offender's confession to show the defendant's involvement in the crimes violates the defendant's constitutional right to confrontation").

[24] See *Lee v. Illinois*, 476 U. S. at 545; see also *Crowder v. State*, 237 Ga. 141, 153 (227 SE2d 230) (1976) (conspirator's attempt to pin blame for crime on another person inherently untrustworthy).

[25] See 265 Ga. at 11.

ant's right of confrontation.[26] Similarly, we held in *Livingston v. State* that the out-of-court confessions of a coconspirator are not admissible in a murder trial under the necessity exception and their admission through the testimony of law enforcement officers violated the defendant's constitutional right to confront the witnesses against him.[27]

A review of the circumstances surrounding the making of the statement in this case shows that Travis Sloan was neither an unimplicated witness, as in the first line of cases, nor an accomplice or codefendant under police custody, as in the second line of cases. Instead, he was under suspicion for the crime of murder when police called him in for questioning. Police investigators had traced the van used in the drive-by shooting to him and determined that he had possession of it on the afternoon that Ferrell and Lofton were shot. Detective Mathis read Sloan his *Miranda* rights and had him sign the waiver of counsel form used for suspects; the detective described Sloan as a reluctant witness and Sloan said that he would not take a polygraph examination. A day earlier, police had questioned Sloan's older brother, Daton Yancey, as a suspect and included Daton's photograph in the photographic lineup shown to Lofton and other witnesses. In addition, Sloan's mother had also been implicated and threatened with arrest for making a false police report in reporting that her car was stolen. Based on these circumstances, we conclude that the fact that Sloan gave his statement to police during the course of an official investigation does not support the trustworthiness of his statement, but rather undermines its sincerity. As a person under suspicion for murder, he had ample motive to lie and shift the blame from himself to others, including the defendant.[28]

The other three factors cited by the trial court also do not provide sufficient indicia of reliability so that a suspect's statement would be admissible under the necessity exception. The U. S. Supreme Court has found that whether a confession is voluntary under the Fifth Amendment "does not bear on the question of whether the confession was also free from any desire, motive, or impulse" that the declarant had to limit his culpability or overstate

---

[26] See id. at 12-13 & n. 3.

[27] See 268 Ga. at 211-212. Cf. *Devier v. State*, 247 Ga. 635, 638 (277 SE2d 729) (1981) (distinguishing between a confidential informant and others who make hearsay allegations in determining whether magistrate had probable cause to issue search warrant).

[28] See *Fenimore v. State*, 218 Ga. App. 735, 738 (463 SE2d 55) (1995) (self-serving and inconsistent statements of suspect in criminal investigation leave truthfulness in doubt). Compare *Holmes*, 271 Ga. at 140 (admitting statements of two men involved in fight that resulted in shooting death in part because neither "was a suspect in the murder and, thus, neither had a motive to fabricate a story regarding the murder").

the defendant's involvement.[29] Moreover, because the relevant circumstances include only those that surround the making of the statement and render the declarant worthy of belief, it is immaterial that Sloan waited until the motion for new trial to recant his statement. Both a delayed retraction and a failure to recant are events that take place after the initial declaration and do not reflect circumstances contemporaneous to the out-of-court statement, unlike the consistent repetition of the statement at the time. Finally, his signature on each page of his three-page statement is not an adequate substitute for the oath and cross-examination by the defendant. Because Sloan's statement to police while under suspicion for the crimes was not made under circumstances demonstrating particular guarantees of trustworthiness, we hold that the trial court should not have admitted it under the necessity exception to the hearsay rule.

3. In addition to challenging the admissibility of Sloan's statement under our state evidentiary rules, Yancey contends that the admission of the statement violated his rights under the Sixth Amendment. Although the rules concerning the Confrontation Clause and hearsay evidence generally protect similar values, they do not always prohibit the same evidence.[30] The Confrontation Clause may bar the admission of some evidence that would be admissible under an exception to the hearsay rule.[31] "The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied."[32]

Because the necessity exception is not a firmly rooted exception to the hearsay rule, the State was required to make a similar showing under federal constitutional law as under state criminal law.[33] Thus, Yancey's constitutional claim also depends on whether Sloan's statement was made under circumstances showing particular guarantees of trustworthiness.[34] For the same reasons that we found Sloan's statement unreliable under state evidentiary law, we hold that its admission under the necessity exception violated Yancey's right of confrontation.

Whether a constitutional violation constitutes harmless error depends on whether the state can prove beyond a reasonable doubt

---

[29] See *Lee v. Illinois*, 476 U. S. at 544.

[30] See *Idaho v. Wright*, 497 U. S. at 814; *California v. Green*, 399 U. S. 149, 155-156 (90 SC 1930, 26 LE2d 489) (1970).

[31] See *Idaho v. Wright*, 497 U. S. at 814.

[32] *Green*, 399 U. S. at 156.

[33] See *Idaho v. Wright*, 497 U. S. at 817 (noting that state's residual exception, which is similar to Georgia's necessity exception, is not a firmly rooted hearsay exception for Confrontation Clause purposes).

[34] See *Higgs*, 256 Ga. at 608-609.

that the error did not contribute to the verdict.[35] " 'The fact that there was other sufficient evidence to convict does not make the error harmless.' "[36] Rather, the test is whether "there is a reasonable possibility that the improperly admitted evidence contributed to the conviction."[37]

Reviewing the evidence, we conclude that admission of the hearsay statement was harmful error. Sloan was the witness who linked the defendant to the van used in the drive-by shooting, thus providing critical support to Lofton's eyewitness identification, which was based on a momentary glance at the van's driver. Sloan also was the witness who tied the defendant to the white sedan, providing a motive for the shooting of the two youths. In addition, he was the only witness who said that the defendant had admitted shooting into the van. During closing argument, the prosecutor read from Sloan's statement and discussed it at length, referring to it as one of the "two bookends" that showed the defendant's guilt. Given the protracted deliberations and the necessity for a "dynamite" charge,[38] the evidence against Yancey was not overwhelming. Because there is a reasonable possibility that the improperly admitted police statement of Travis Sloan contributed to the verdict, we reverse.

*Judgment reversed. All the Justices concur, except Hunstein, Carley and Thompson, JJ., who dissent.*

CARLEY, Justice, dissenting.

I agree with the majority that the trial court should not have admitted Sloan's statement under the necessity exception to the hearsay rule and that such admission also violated Yancey's right of confrontation in this particular case. I submit, however, that the error was clearly harmless because it is cumulative of other admissible evidence.

This Court has often held that the erroneous admission of testimony under the necessity exception is harmless where there is other evidence proving the substance of the hearsay testimony. *Gardner v. State*, 273 Ga. 809, 813 (7) (546 SE2d 490) (2001); *Bellamy v. State*, 272 Ga. 157, 161 (7) (527 SE2d 867) (2000); *Holmes v. State*, 271 Ga. 138, 141 (2) (516 SE2d 61) (1999); *Suits v. State*, 270 Ga. 362, 365 (2) (507 SE2d 751) (1998); *Fetty v. State*, 268 Ga. 365, 368 (4) (489 SE2d 813) (1997); *Smith v. State*, 266 Ga. 827, 831 (4) (470 SE2d 674) (1996). Furthermore, the admission of confessions or other incrimi-

---

[35] See *Chapman v. California*, 386 U. S. 18, 24 (87 SC 824, 17 LE2d 705) (1967); *State v. Hightower*, 236 Ga. 58, 61 (222 SE2d 333) (1976).

[36] See *Mangum v. State*, 274 Ga. 573, 577 (555 SE2d 451) (2002).

[37] See *Schneble v. Florida*, 405 U. S. 427, 432 (92 SC 1056, 31 LE2d 340) (1971).

[38] See *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896).

nating statements in violation of the defendant's constitutional rights is also harmless when it is cumulative of the testimony of other witnesses. *Borders v. State*, 270 Ga. 804, 809 (3) (514 SE2d 14) (1999); *Burnham v. State*, 265 Ga. 129, 134 (6) (453 SE2d 449) (1995); *Tankersley v. State*, 261 Ga. 318, 321 (2) (b) (404 SE2d 564) (1991). Likewise, other similar, but admissible, testimony can render a violation of the Confrontation Clause harmless beyond a reasonable doubt. *Vaughns v. State*, 274 Ga. 13, 15 (3) (549 SE2d 86) (2001); *Jones v. State*, 265 Ga. 84, 86 (4) (453 SE2d 716) (1995); *Byrd v. State*, 262 Ga. 426, 428 (2) (420 SE2d 748) (1992).

To support its conclusion that admission of the evidence requires reversal of the conviction, the majority applies an inverted harmless error analysis by its initial indication that Sloan's statement linking Yancey to the van used in the drive-by shooting was harmful because it corroborated Lofton's eyewitness identification. This observation actually demonstrates a lack of prejudice to Yancey. Indeed, Sloan's statement regarding his loan of the van was, at most, cumulative of Lofton's far stronger testimony. Lofton gave a detailed description of Yancey, picked him out of an extensive photographic lineup, and identified him at a preliminary hearing and at trial as the person who was driving the van at the time of the shooting. The majority also inaccurately states that Sloan "was the witness who tied the defendant to the white sedan. . . ." To the contrary, this portion of Sloan's statement was only cumulative of the stronger trial testimony of the Oldsmobile's previous owner that Yancey was driving the white sedan when they fought. That admissible testimony, rather than Sloan's statement, constituted the evidence of motive. Similarly, Sloan's statement regarding Yancey's admissions concerning the van and the shooting was cumulative of both the eyewitness testimony and the evidence that, when the abandoned van was discovered, the windows were broken and shell casings found on the floor were from the same rifle as the one used in the murder. Because Sloan's statement was merely cumulative of other overwhelming probative evidence, there was not a reasonable possibility that it contributed to the verdict. Therefore, any error in admitting the statement was clearly harmless beyond a reasonable doubt. See *Vaughns v. State*, supra; *Jones v. State*, supra; *Byrd v. State*, supra. Accordingly, I dissent to the judgment reversing the conviction.

I am authorized to state that Justice Hunstein and Justice Thompson join in this dissent.

DECIDED SEPTEMBER 16, 2002 —
RECONSIDERATION DENIED OCTOBER 11, 2002.

*Harold S. Gulliver*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jill M. Zubler, Assistant Attorney General*, for appellee.