## S03A0850. EVERRITT v. THE STATE.

(588 SE2d 691)

THOMPSON, Justice.

Defendant Raymond F. Everritt, John Henry McDuffie and James Wallace Weeks were indicted for the murder with malice aforethought of Roosevelt Cox. McDuffie died one month before the case was to be tried; Weeks admitted his complicity in the murder and testified at trial against Everritt, who appeals from his conviction and enumerates error upon the denial of his motion for a directed verdict of acquittal.[1] To address this enumeration, we must answer this question: Can one who enters a successful conspiracy to commit arson be held criminally responsible for the murder of one co-conspirator by another, when the murder was committed months after the arson in order to keep the conspiracy secret?

Viewing the evidence in a light to uphold the verdict, as we are bound to do, see *Johnson v. State*, 273 Ga. 345 (541 SE2d 357) (2001), we find the following: Everritt owned and operated a service station in Shellman, Georgia. Because he was experiencing financial problems, Everritt hired James McDuffie to burn down the station, which was insured.[2] Everritt was to pay McDuffie $5,000 for his services out of the insurance proceeds.

McDuffie tried to burn down the station with a Molotov cocktail in June of 1992. He recruited his teenage grandson, Jamie Weeks, to help him in that attempt, but they failed – the incendiary device hit the side of the building, missing the window. Soon thereafter, McDuffie asked Cox, who worked for McDuffie, to help him burn the station. He agreed to pay Cox $1,500. Two weeks after the first, failed attempt, McDuffie and Cox burned down the station with an accelerant.

At first, Everritt's insurance company declined to pay on the policy because of the suspicious circumstances surrounding the fire. Everritt hired an attorney to press his insurance claim. But payment was not forthcoming and, as time went by, Cox remained unpaid. Cox told friends that Everritt owed him $1,500 for burning down the station; and he began to complain that he had not yet been paid by either McDuffie or Everritt. McDuffie was worried because Cox would not keep quiet. In September of 1992, he lured Cox into his shop and killed him with an axe. That day, Everritt called his attor-

---

[1] Cox was killed in September 1992. The grand jury indicted Everritt on May 7, 2001. Trial commenced on November 12, 2001, and the jury rendered its verdict November 19, 2001. The trial court sentenced Everritt to life in prison and Everritt filed a timely motion for a new trial. The trial court denied the motion on March 28, 2002, and Everritt filed a notice of appeal on April 16, 2002. The case was docketed in this Court on February 26, 2003, and orally argued on June 17, 2003.

[2] Everritt increased his insurance coverage the month before the station was burned.

ney's office more than three times. He also called his wife, who worked at a bank which had loaned him money.

Jamie Weeks helped McDuffie dispose of Cox's body, which was discovered by hunters on September 27, 1992. Thereafter, in March of 1993, Everritt's insurance claim was settled for $123,065. Nearly nine years later Everritt, McDuffie, and Weeks were charged with the murder of Cox.

Jamie Weeks, who was 26 years old at the time of trial, testified[3] that shortly after the murder, Everritt gave McDuffie a set of tires to conceal the fact that McDuffie used his truck to transport the victim's body. He also testified that Everritt later warned Weeks to keep his mouth shut.

Everritt asserts the evidence is insufficient to enable a rational trier of fact to find him guilty beyond a reasonable doubt of the malice murder of Roosevelt Cox. In this regard, defendant posits that the evidence fails to demonstrate that he conspired with McDuffie to kill Cox. The State counters that the evidence suffices to show a conspiracy between Everritt and McDuffie to kill Cox; that, even if it does not, it proves that Everritt, McDuffie, and Cox conspired to burn down Everritt's place of business and that McDuffie murdered Cox in furtherance of that conspiracy.

As to the State's first argument, we agree with Everritt that the evidence fails to show a conspiracy to murder Cox. Although the existence of a conspiracy can be shown by circumstantial evidence, see *Causey v. State*, 154 Ga. App. 76, 78 (267 SE2d 475) (1980), there was absolutely no evidence tying Everritt to a conspiracy to commit murder. That Everritt placed calls to his attorney and bank on the day of the murder proves nothing one way or the other. And the fact that Everritt gave McDuffie a set of tires after the murder only shows that he was a party to the murder after the fact. See *Grant v. State*, 227 Ga. App. 243, 245 (488 SE2d 763) (1997) (to be guilty as a conspirator to a crime, one must be an accessory before the fact). It sheds no light on the existence of a murder conspiracy.

With respect to the State's second argument, we agree that the evidence was sufficient to demonstrate that Everritt entered a conspiracy to commit arson with McDuffie and Cox. But that does not end our inquiry; it merely begs the question: Having entered into a conspiracy with McDuffie and Cox to commit arson, is Everritt responsible for the murder of Cox by McDuffie? The State asserts that he is because McDuffie killed Cox to further concealment of the conspiracy. We cannot accept this assertion.

---

[3] Weeks agreed to testify in accordance with a negotiated nolo contendere plea to voluntary manslaughter. Under the plea agreement, Weeks was to receive a probated sentence and a fine.

[A] criminal conspiracy is a partnership in crime, and . . . there is in each conspiracy a joint or mutual agency for the prosecution of a common plan. Thus, if two or more persons enter into a conspiracy, any act done by any of them pursuant to the agreement is, in contemplation of law, the act of each of them and they are jointly responsible therefor. This means that everything said, written, or done by any of the conspirators in execution or furtherance of the common purpose is deemed to have been said, done, or written by each of them. . . . And this joint responsibility extends not only to what is done by any of the conspirators pursuant to the original agreement but also to *collateral acts* incident to and growing out of the original purpose. [Cit.]

(Emphasis supplied.) *Burke v. State*, 234 Ga. 512, 514 (216 SE2d 812) (1975). However, a defendant can be held criminally responsible for such collateral acts only if it can be said that they are a *natural* and *probable* consequence of the conspiracy. *Huffman v. State*, 257 Ga. 390, 392 (3) (359 SE2d 910) (1987); *Burke v. State*, supra. See also *Crawford v. State*, 210 Ga. App. 36, 38 (435 SE2d 64) (1993) (defendant who conspired to commit robbery was a party to armed robbery because accomplice's use of weapon was naturally done in furtherance of conspiracy even if not part of original agreement); *Shehee v. State*, 167 Ga. App. 542 (307 SE2d 54) (1983) (each conspirator is responsible for acts of others if such acts are naturally or necessarily done pursuant to or in furtherance of conspiracy).

The State argues that Cox's murder was necessary to conceal the conspiracy to commit arson and that, therefore, Everritt should be deemed responsible. This argument misses the mark because the question is not just one of necessity, but of "reasonable foreseeability." See *Pinkerton v. United States*, 328 U. S. 640, 647-648 (66 SC 1180, 90 LE 1489) (1946) (conspirator is liable for crime committed by co-conspirator during the course and in furtherance of conspiracy, unless crime "did not fall within the scope of the unlawful project, or was merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement"). Under the facts of this case, it cannot be said that the murder of Cox could be reasonably foreseen as a necessary, probable consequence of the conspiracy to commit arson. Compare *United States v. Alvarez*, 755 F2d 830, 848-849 (11th Cir. 1985) (murder of undercover federal agent in midst of drug deal and shootout was reasonably foreseeable consequence of drug conspiracy based on amount of drugs and money involved in deal and likelihood that weapons would be used), cert. denied, *Hernandez v. United States*, 474 U. S. 905 (106 SC 274, 88 LE2d 235) (1985). Simply put, a con-

spiracy to commit arson, without more, does not naturally, necessarily, and probably result in the murder of one co-conspirator by another. Were we to rule otherwise, we would be forced to confront serious due process concerns. See *Alvarez* at 850 (due process limitations accompany doctrine of vicarious guilt in cases involving "attenuated relationships between the conspirator and the substantive crime"); *United States v. Johnson*, 730 F2d 683, 690, n. 8 (11th Cir. 1984), cert. denied, *Johnson v. Commr. of Internal Revenue*, 469 U. S. 857 (105 SC 186, 83 LE2d 119) (1984). See also LaFave, Substantive Criminal Law § 13.3 (a) (2nd ed.), p. 358 ("As the draftsmen of the Model Penal Code have pointed out, 'law would lose all sense of just proportion' if one might, by virtue of his one crime of conspiracy, be 'held accountable for thousands of additional offenses of which he was completely unaware and which he did not influence at all.' ").

The evidence was insufficient to enable a rational trier of fact to find Everritt guilty beyond a reasonable doubt of the malice murder of Roosevelt Cox. It follows that the trial court erred in denying Everritt's motion for a directed verdict of acquittal.

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 10, 2003 —
RECONSIDERATION DENIED DECEMBER 12, 2003.

*Donaldson, Bell & Pickett, George P. Donaldson III, Misty D. Garrett,* for appellant.

*Charles M. Ferguson, District Attorney, Ron S. Smith, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jennifer S. Gill, Assistant Attorney General,* for appellee.