### A05A0220. HALL v. THE STATE.
(612 SE2d 44)

MIKELL, Judge.

Following a jury trial, Alicia Michelle Hall was convicted of voluntary manslaughter and possession of a knife during the commission of a crime for the stabbing death of her boyfriend, Christopher Andrews. The court sentenced Hall to twenty years, with eight to be served in confinement and the balance on probation. On appeal from the denial of her motion for new trial, Hall argues that the trial court erred in allowing the state to read into evidence two letters that had not been authenticated or admitted into evidence, and in denying her ineffective assistance of counsel claim. For the reasons stated below, we affirm.

The facts are not in dispute. In 1995, Hall and Andrews began a romantic relationship which produced two children. Hall testified that during their relationship Andrews often hit her with his fist, but she accepted it because she loved him. During one incident in 1997, Andrews hit Hall on the head with a beer bottle. A police report was filed, but Hall declined to prosecute the case.

On the evening of March 10, 2000, an intoxicated Andrews came over to Hall's house, where the two began to argue about Hall being pregnant with another man's baby. Andrews hit Hall in the face. Hall's three-year-old son, who was present during the argument,

---

began to cry. Andrews hit Hall in the stomach and the chest, stating that "he owed . . . [her] a beating." Hall picked up her purse and attempted to leave the room, but Andrews would not let her. As Andrews punched Hall in the stomach, she reached into her purse for a knife and stabbed him in the chest. Hall screamed for help and called an ambulance. When officers arrived, Hall told Investigator Jo Ann Nutter of the Richmond County Sheriff's Office that she stabbed Andrews, but did not mean to hurt him. Later that evening, after being advised of her rights by Nutter, Hall gave a taped confession. At trial, Hall testified that she "didn't . . . [mean] to hurt [Andrews] like I did" and that she was "scared and . . . afraid because he was trying to hurt me and my baby."

1. Hall contends that the trial court erred in denying her ineffective assistance of counsel claim. Hall argues that trial counsel's performance was defective because he did not oppose the state's motion in limine to exclude evidence of the battered woman syndrome in support of Hall's claim of self-defense, explaining that Hall could not afford to hire an expert.

> The battered woman syndrome describes a series of common characteristics that appear in women who are abused physically and psychologically over an extended period of time by the dominant male figure in their lives. The syndrome does not stand as a separate defense but rather is evidentiary support for a claim of justification under OCGA § 16-3-21 (d).[1]

At the hearing on the motion for new trial, trial counsel testified that he had considered the couple's alleged violent history, but could not establish a pattern; even though Hall "had anecdotal information" about other incidents, only the 1997 incident was documented. Counsel, who had been retained by Hall's family, discussed the battered woman syndrome defense with Hall and her family and contacted Marti Loring, an expert on battered woman syndrome, whom counsel had met at a seminar. Counsel testified that he looked seriously at using the battered woman syndrome defense, but could not hire Loring because there was no money to pay her $3,000 fee. Counsel did not contact any other experts and did not file a motion for funds to hire an expert because, "I was traveling on the assumption that if I'm retained I cannot ask the state for money. But, you know, subsequent to that I've seen other lawyers do that. I really, in

---

[1] (Citation and punctuation omitted.) *Adame v. State*, 244 Ga. App. 257, 258 (1) (534 SE2d 817) (2000).

retrospect, wish I had just come to the court and said, look, this is the situation . . . I did not do it." Counsel testified that "testimony as to the battered woman's syndrome would have given us, as I said, that extra edge."

Though we recognize that the battered woman syndrome is a scientifically established theory that has been used repeatedly to assist juries in evaluating a claim of self-defense, in this case, Hall has not shown that trial counsel's failure to produce an expert on the theory fell below an objective standard of reasonableness.[2] Although counsel testified that, in retrospect, he would have filed a motion for funds to hire an expert, counsel also testified that it would be difficult to establish a pattern of violence.[3] Furthermore, Hall has not demonstrated that there was a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different.[4] Even though counsel opined that expert testimony regarding the syndrome would have given the defense an "extra edge," counsel also testified that it would have been difficult to establish the pattern of abuse necessary to support admission of such testimony. Because Hall has not met either prong of the test for establishing ineffective assistance of counsel under *Strickland*,[5] the trial court did not err in denying her motion for new trial on this ground.

2. Hall next argues that the trial court erred in allowing the state to read into evidence two letters from the Richmond County Sheriff's Department that had not been authenticated or admitted into evidence. Hall argues that the letters were damaging to her credibility as a witness and to her defense.

During cross-examination, the state questioned Hall about the 1997 incident involving Andrews. Hall stated that she did not press charges because she was told at the hospital that "the [s]tate was going to pick it up." Hall never heard anything further from the state and did not remember receiving a follow-up letter from the state about prosecuting Andrews. Attempting to refresh Hall's recollection, the prosecutor then showed Hall copies of two letters from the Richmond County Sheriff's Office. The following exchange ensued:

Q: So this letter does not help refresh your recollection; is that what you're saying?
A: I've never seen nothing like that before.

---

[2] See *Lewis v. State*, 265 Ga. 451, 452 (3) (457 SE2d 173) (1995).

[3] See, e.g., *Madge v. State*, 245 Ga. App. 848, 852 (3) (a) (538 SE2d 907) (2000) ("[w]e do not judge effectiveness of counsel by hindsight or by what present counsel would have done") (citation and footnote omitted).

[4] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[5] Id.

Q: Okay, is this letter — does it appear to be a letter from the Richmond County Sheriff's Office?
A: Yes.
Q: Okay, is it addressed to you?
A: Yes.
Q: Is this your name?
A: Yes, that's my name.
Q: And does it ask you about an incident that occurred at the 3635 London Boulevard? Does it refer to the incident that we've been talking about here from 1997?
A: Yes.
Q: And does it give you a date of when the incident happened?
A: Well, I see, I just can't understand.
Q: Okay, and does this letter, if you had received it, does it give you a telephone number to call someone at the sheriff's office for assistance?
A: Yes.
Q: Okay, but you don't recall this letter?
A: No. . . .
Q: Now, Ms. Hall, I'm showing you another letter. Does this also appear to be a Richmond County Sheriff's Department letter?
A: Yes.
Q: And who's it addressed to?
A: To Alicia, myself.
Q: To you?
A: Uh-huh [yes].
Q: And does it say — who's it from?
A: Investigator M. Wells.
Q: Okay, and you don't recognize this letter either?
A: No.
Q: And so you're telling me you never received a copy of a letter like this?
A: No, I haven't.
Q: Okay, does this letter also reference the date of June 16th, 1997?
A: Yes.
Q: And the incident that happened at 3635 London Boulevard?
A: Yes.
Q: Okay, and it gives the telephone number at the sheriff's office where you can reach to get help; is that correct?
A: Yes.
Q: But you didn't receive this letter either?
A: No.

OCGA § 24-9-69 provides that "[a] witness may refresh and assist his memory by the use of any written instrument or memorandum, provided he shall finally speak from his recollection thus refreshed or shall be willing to swear positively from the paper." Once a witness states that his recollection is not refreshed by the writing, it is improper to subject the witness to further questioning about the writing.[6]

We agree with Hall that the trial court impermissibly allowed the state to question Hall about the contents of the letters; however, we fail to see how the trial court committed reversible error. First, Hall has not shown that she objected to use of the letters at trial, and she cannot raise the objection for the first time on appeal.[7] Moreover, the letters did nothing more than show that Hall reported the 1997 incident to the sheriff's office and that the sheriff's office attempted to help her; the letters did not introduce new evidence or impeach Hall any more than her own testimony. Hall's own testimony confirmed that she did not follow up with the sheriff's office because she was not scared of Andrews. Hall admitted that she did not seek a protective order against Andrews after the 1997 incident; that she did not think it was strange that she was never contacted by the sheriff's office about the incident; that she went on to have a second child with Andrews after the 1997 incident; and that she continued to live with him. Accordingly, this assertion is without merit.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED MARCH 15, 2005.

*James P. Theodocion*, for appellant.
Alicia M. Hall, *pro se.*
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.

---

[6] See, e.g., *Brown v. State*, 247 Ga. App. 741, 743 (1) (545 SE2d 114) (2001).

[7] See *Slack v. State*, 265 Ga. App. 306, 308 (4) (593 SE2d 664) (2004) (" 'Objections not raised at trial cannot be raised for the first time on appeal.' ") (footnote omitted).